## FEDERAL LAND BANK OF OMAHA et al. v. UNITED STATES NAT. BANK.

(Circuit Court of Appeals, Eighth Circuit. May 25, 1926.)

No. 7155.

1. Statutes ⬥267(2)—Statute amending Judicial Code held effective to destroy court's jurisdiction of pending action by or against corporation created under act of Congress, there being no saving clause (Act Feb. 13, 1925, § 12 [Comp. St. Supp. 1925, § 991d].

Act Feb. 13, 1925, amending the Judicial Code, particularly section 12 (Comp. St. Supp. 1925, § 991d), providing that District Court shall not have jurisdiction of any action or suit by or against any corporation on the ground that it was incorporated by or under an act of Congress, held effective to destroy court's jurisdiction of pending action, there being no saving clause.

2. Courts ⬥310—Casualty company, as party plaintiff with a Federal Land Bank in action to recover money paid on Land Bank check bearing forged indorsement, held not to have established a separate case entitling it to maintain suit (Comp. St. Neb. 1922, § 8542).

Casualty company, a party plaintiff with a Federal Land Bank in an action to recover of another bank moneys paid on check of plaintiff bank bearing indorsement forged by one whose fidelity was guaranteed by casualty company, held not to have made a separate case against defendant, entitling it to maintain suit, in view of Comp. St. Neb. 1922, § 8542, where assign-

ment to it was of undivided interest, subject to contingencies.

### 3. Assignments ⬥121.

In absence of statute, assignee cannot sue on assigned claim.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by the Federal Land Bank of Omaha and another against the United States National Bank. Judgment for defendant, and plaintiffs bring error. Reversed, with directions.

Frank S. Howell and E. F. Dougherty, both of Omaha, Neb. (Frank H. Gaines and Byron B. Oberst, both of Omaha, Neb., M. L. Corey, of Washington, D. C., and Charles E. Lobdell, of Great Bend, Kan., on the brief), for plaintiffs in error.

Edgar M. Morsman, Jr., of Omaha, Neb. (Morsman, Maxwell & Haggart, of Omaha, Neb., and T. H. Null, of Huron, S. D., on the brief), for defendant in error.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. This action was instituted on July 18, 1924, by Federal Land Bank of Omaha, Nebraska, and New Amsterdam Casualty Company, as plaintiffs, against United States National Bank of Omaha, as defendant. The complaint alleges that the Federal Land Bank "is a corporation duly organized, existing and chartered under and by virtue of an Act of Congress, the short title of which Act is, the Federal Farm Loan Act, approved July 17, 1916 (Comp. St. §§ 9835a–9835z)," that the principal office of the Land Bank is in the City of Omaha, Nebraska, that it derives its rights and powers as a corporation and the right to do business under and by virtue of said Act of Congress, and that its claim herein sued on arose while it was exercising its power to do business in the States of Iowa, Nebraska, South Dakota and Wyoming under said Act of Congress. It is alleged that on July 19, 1923, the Land Bank had more than $5,045.00 on deposit with defendant bank, which was held by the latter bank subject to the order and draft of the Land Bank, that it had theretofore agreed to make a loan to one Michael Reiser on 160 acres of land which he owned in Roberts County, South Dakota, and had received from Reiser his note and mortgage therefor, that on said July 19th it drew a check on defendant bank for the sum of $5,045.00, payable to the order of Michael Reiser and N. C.

Klein, Secy. Treas., who was secretary and treasurer of the Sisseton National Farm Loan Association, through which Reiser had applied for the loan, that the check was forwarded to Klein, whose duty it was to see that prior mortgage liens and other liens then on the 160 acres were paid off out of the sum named in the check and the remainder, if any, turned over to Reiser, that Klein, without authority from Reiser or the Land Bank, signed Reiser's name and his own name on the back of the check, caused it to be forwarded and presented to defendant bank, which paid it and charged the amount thereof against the account of the Land Bank, that Klein paid Reiser $650.00 out of the amount of the check and has ever since retained and appropriated to his own use the balance thereof, $4,395.00. It is alleged that the Federal Land Bank was notified in January, 1924, that Reiser's name had been endorsed on the back of the check by Klein without authority, that in that month the Land Bank paid to Reiser the balance due him as the proceeds of his loan, that defendant bank, since February 18, 1924, has been fully informed of the facts and circumstances hereinbefore stated but has refused and still refuses to refund or credit the account of the Land Bank with any part of the $5,045.00. It is alleged that the New Amsterdam Casualty Company "is a corporation duly organized, existing and chartered under the laws of the State of New York, with its principal office in the City of Baltimore, State of Maryland," and that defendant bank is a corporation duly organized and chartered under the Act of Congress commonly known as the National Banking Act (13 Stat. 99, as amended), and has its principal office and does a banking business in the City of Omaha, Nebraska. It is further alleged "that on or about the 3d day of March, 1924, the plaintiff, New Amsterdam Casualty Company, for a valuable consideration acquired by assignment an undivided interest in and to the claim of the plaintiff, Federal Land Bank of Omaha, against the said defendant, and that the extent and exact amount of the interest of each plaintiff is subject to agreement between them." The plaintiffs asked judgment against the defendant in the sum of $4,395.00, with interest from the time defendant honored and paid the check.

The jurisdiction of the District Court over the controversy between the two banks is based on the allegation that the Federal Land Bank was chartered under the Act of Congress known as the Federal Farm Loan Act; and at the time the complaint was filed it was a sufficient allegation for that purpose. In

American Bank & Trust Co. v. Federal Reserve Bank of Atlanta, 256 U. S. 350, 41 S. Ct. 499, 65 L. Ed. 983, it is said: "The principal defendant was incorporated under the laws of the United States and that has been established as a ground of jurisdiction since Osborn v. Bank of the United States, 9 Wheat. 738 [6 L. Ed. 204]."

[1] The answer to the complaint, which joined issue on the merits, did not come in until May 4, 1925, to which a replication was filed on the 12th of that month. The case went to trial before a jury on the day last named, and the trial was concluded on May 15th, on which day, at the direction of the court a verdict was rendered in favor of the defendant and judgment was at once entered in its favor with costs against the plaintiffs. Because of the Act approved February 13, 1925 (43 Stat. 936), amending the Judicial Code, plaintiffs in error in their brief call attention to the question of jurisdiction of the District Court at the time judgment was rendered. Section 12 of that Act (Comp. St. Supp. 1925, § 991d), in so far as material here, reads thus: "That no District Court shall have jurisdiction of any action or suit by or against any corporation upon the ground that it was incorporated by or under an Act of Congress." The act went into effect on May 13, 1925. It has no saving clause of actions or suits pending at the time it became effective; and we think under the settled rule jurisdiction of the District Court was ousted on May 13th, it was without authority to proceed further and the judgment it entered on May 15th was void. In Assessors v. Osbornes, 9 Wall. 567, 19 L. Ed. 748, the court had jurisdiction of the controversy when the complaint was filed on July 20, 1866. While the action was pending Congress repealed the Act which gave the court jurisdiction. It was contended by plaintiffs that because the case was properly cognizable in the Circuit Court at the time it was commenced the subsequent repeal of the provision conferring such jurisdiction did not impair the right of the plaintiffs to maintain the suit. In answer to this contention the court said:

"Circuit Courts are courts of special jurisdiction, and therefore they cannot take jurisdiction of any case, either civil or criminal, where they are not authorized to do so by an Act of Congress. Jurisdiction in such cases was conferred by an Act of Congress, and when that Act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no saving clause, all pending actions fell, as the jurisdiction depended entirely upon the Act of Congress."

In Railroad Co. v. Grant, 98 U. S. 398, 25 L. Ed. 231, a judgment was rendered against plaintiff in error for $2,250.00. At that time the statute provided that the cause might be removed on writ of error to the Supreme Court if the matter in dispute was of the value of $1,000.00 or upward. Thereafter the statute was amended in requiring that the matter in dispute exceed the value of $2,500.00; and the defendant in error moved to dismiss the writ of error on the ground that the jurisdiction of the Supreme Court had been taken away. In considering the motion the court said:

"It is equally well settled that if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law."

It was contended by plaintiff in error that taking the whole of the amending Act together the intention of Congress not to interfere with jurisdiction in pending cases was manifest. Responding to this contention the court said:

"Indeed, so common is it, when a limited repeal only is intended, to insert some clause to that express effect in the repealing act, that if nothing of the kind is found, the presumption is always strong against continuing the old law in force for any purpose. * * * There is nothing in the statute which indicates any intention to make a difference between suits begun and those not begun. * * * No declaration of any such object on the part of Congress is found in the law; and when, if it had been the intention to confine the operation of what was done to judgments thereafter rendered or to cases not pending, it would have been so easy to have said so, we must presume that Congress meant the language employed should have its usual and ordinary signification, and that the old law should be unconditionally repealed."

In Hallowell v. Commons, 239 U. S. 506, 36 S. Ct. 202, 60 L. Ed. 409, it appears that by Act of Congress the Circuit Courts were given jurisdiction to determine the heirs of an allotted Indian. By the Act of June 25, 1910 (36 Stat. 855), it was provided that the Secretary of the Interior should ascertain the legal heirs in such case and that his decision should be final and conclusive. It was held that this Act terminated the jurisdiction of the courts over the subject and that it was "unnecessary to consider whether there was jurisdiction when the suit was begun."

In Western Union Teleg. Co. v. Louisville

& Nashville R. R. Co., 258 U. S. 13, 42 S. Ct. 258, 66 L. Ed. 437, the District Court had jurisdiction of the proceeding when it was instituted to condemn in favor of the telegraph company a right of way for a telegraph line over a part of the railroad's right of way, under the Kentucky statute. Pending that proceeding the Legislature of Kentucky passed an Act which provided that no part of the right of way of any railroad company, or any interest or easement therein, should be taken by any condemnation proceedings without the consent of the railroad company. In considering the effect of this Act the court said: "It takes away the power to condemn the right of way of a railroad company by telegraph companies and it does not save proceedings commenced before its applicable date. Such reservation is usual, if intended." See also 15 C. J. p. 825, § 140. We see no reason to doubt the application of this rule of construction to the twelfth section of the Act of February 13, 1925; and plaintiffs in error do not insist that the District Court had authority to hear and adjudge the issue between the two banks on and after May 13th.

[2] Counsel for plaintiffs in error, however, argue that under the proof in the case the New Amsterdam Casualty Company had a right to maintain the action in its name alone, that the Federal Land Bank was, therefore, an unnecessary party, and the court had jurisdiction to render the judgment. The complaint alleges that the Casualty Company acquired an undivided interest in the claim in suit, the amount thereof being subject to agreement between plaintiffs. It does not allege that plaintiffs had agreed on the amount of or proportionate share in the claim assigned to the Casualty Company. According, then, to the allegation plaintiffs were joint owners of the claim, each holding an undivided unnamed interest in the whole. The Nebraska Code, after provisions that every action shall be prosecuted in the name of the real party in interest, and that an assignee of a chose in action may maintain suit thereon in his own name, provides (Comp. Stat. Neb. 1922, § 8542):

"Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason [therefor] being stated in the petition."

[3] This appears to have been copied from the New York Code, found in Chew v. Brumagen, infra, a common provision in the State Practice Acts. The purpose of this statutory requirement is to prevent the splitting of claims, thus harrassing a defendant with more than one action; requiring that the entire claim shall be adjudicated in one suit, thus keeping down the expense of litigation. It embodies a common-law principle. 1 Chitty on Pleading (16th Am. Ed.) p. 14. But for statute an assignee could not sue. Id. p. 24. We are not concerned with the right of an assignee to maintain a separate action for his share under the second noted provision of the code, where the assignment is of a stated part, per cent. or amount of the whole claim. The allegation here is an assignment of an undivided interest the extent and exact amount thereof being subject to agreement between the plaintiffs. Under the quoted section and the authorities construing it, a joinder as plaintiffs seems on the allegation to be imperative, unless one of the parties refuses, when he must be made defendant. Bliss on Code Pleading (2d Ed.) §§ 61, 65, 118; Estee's Pleadings (4th Ed.) § 135; 15 Encyc. Pl. & Pr. p. 734; 30 Cyc. p. 113. See also Chew v. Brumangen, 13 Wall. 497, 20 L. Ed. 663.

Turning to the claimed written assignment offered in evidence, we do not find that any interest in the claim in suit was unconditionally assigned to the Casualty Company. It is in the form of a contract between the Federal Land Bank as party of the first part, and New Amsterdam Casualty Company as party of the second part. There were contingencies on which the Casualty Company might or might not obtain an interest in the claim sued on. The contract recites that the Casualty Company guaranteed the fidelity of Klein, that the Land Bank claimed there had been a breach of that obligation entitling it to recover the full amount of the guaranty from the Casualty Company, that it had demanded immediate payment of the second party, that the second party was willing to make the payment under the terms and conditions expressed in the contract, that the first party intended to bring suits against the Omaha National Bank, the United States National Bank, and perhaps other banks on account of alleged forged endorsements by the said Klein whereby checks issued by the first party on said banks had been wrongfully paid out of the funds of the first party; the obligation then stated in the contract runs thus:

"It is therefore agreed, in consideration of said payment by second party to first party, without suit, that first party will and does

hereby assign, set over, and transfer to the said second party all of its rights and claims against said banks and the said Klein, growing out of such alleged forged endorsements; subject, however, to the right of the first party to reimburse in full for any balance remaining to it growing out of said fraudulent transactions; the intention being that the first party shall be first made whole, and if any amounts shall be recovered from the said Klein or said banks over and above such amount, then such amount shall belong to the second party hereto, and to any other surety company which has contributed towards said loss in proportion as their interests may appear.

"It is further understood and agreed that the first party shall have the right to bring suit or suits against the said Klein or against the above named or other banks, in its own name, or otherwise, as may be determined by the parties hereto, with the understanding that any sum or sums recovered by the first party in such suits shall be first used towards indemnifying it in full for any losses that it may have sustained by virtue of said defaults of the said Klein, and after said first party has been thus indemnified, then any sum or sums that it may recover shall be paid by it and turned over to the second party and other surety company which has contributed towards such loss as the interests of such surety companies may appear; provided, however, that the first party may withhold such payment to the surety companies until they shall have determined as between them the amount that is due to each."

The contract further provided that the parties should co-operate for recovery of losses occasioned by the defaults of Klein; that the second party reserved the right to bring suit in its own name to recover from Klein or the banks, or other parties, or to unite with the first party as plaintiff or defendant in any suit brought for that purpose. Of course, the Land Bank could not endow the Casualty Company with a right to sue unless on the facts the law gave it that right. The alleged assignment stated in the contract was subject to the Land Bank being first reimbursed in full for its losses, and the surplus, if any, which it might recover from the banks or Klein over and above its losses was to belong to the Casualty Company and other surety companies that had contributed to paying the losses sustained by the Land Bank on account of their obligations as guarantors of Klein's fidelity. That surplus, if any,

which might be recovered by the Land Bank in its suits against Klein and the banks was to be paid over to all of the surety companies after they had determined the amount due to each, and the Land Bank was to retain said surplus amount until that determination was made. There is no allegation in the complaint that the contingencies have occurred on which the Casualty Company was to have an interest in the claim of the Land Bank against defendant, nor the amount of that interest, nor that the amount thereof was sufficient to give the district court jurisdiction of the controversy between the Casualty Company and the defendant; nor were these facts established by the proof. It thus appears the Casualty Company failed to make a separate case on either pleading or proof.

Reversed with directions to set aside the judgment and dismiss the case.