### KOGLER v. MILLER, Alien Property Custodian, et al.

(Circuit Court of Appeals, Third Circuit. May 2, 1923.)

No. 2995.

**War ⊚⟹12—Pending suit against Alien Property Custodian abated by amendment of Act.**

The right or privilege of recovering money or property seized by the Alien Property Custodian exists only by virtue of the consent given by Congress, which consent may at any time be withdrawn, and the effect of Trading with the Enemy Act, § 9, as amended by Act June 5, 1920, withdrawing the right as to claimants not citizens of the United States, unless the claim "arose with reference to the money or property" held, was to abate suits pending at the time of the amendment on claims which did not so arise.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action by Edward Kogler against Thomas W. Miller, Alien Property Custodian, Frank White, Treasurer of the United States, and Rudolph Chillingworth. Judgment for defendants and plaintiff brings error. Affirmed.

Lintott, Kahrs & Young, of Newark, N. J. (John M. Patterson, of Philadelphia, Pa., Otto C. Sommerich, of New York City, Joseph Kahrs, of Newark, N. J., and Morris Wolf, of Philadelphia, Pa., of counsel), for plaintiff in error.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Dean Hill Stanley, Sp. Asst. U. S. Atty., of Washington, D. C., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Rudolph Chillingworth, a subject of the German Empire residing in Germany and therefore an "enemy" of the United States, owned shares of stock of the Chillingworth Manufacturing Company, a corporation of the State of New Jersey. The Alien Property Custodian seized and sold his shares and turned over the proceeds to the Treasurer of the United States. In 1919, Kogler, also a subject of the German Empire but residing in the United States and therefore "not an enemy, or ally of enemy" of the United States, brought this action under Section 9 of the Trading with the Enemy Act to recover from the Alien Property Custodian and the Treasurer of the United States a debt which Chillingworth owed him for services performed for several years in connection with the Chillingworth Manufacturing Company, reckoned at six hundred marks a month. Kogler had a decree which on appeal was reversed for failure of the bill to disclose the jurisdiction of the court. 272 Fed. 442. After amendment the defendants pleaded Subdivision (e) of Section 9 of the Trading with the Enemy Act as amended by the Act of June 5, 1920. 40 Stat. 411, 419 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j); 41 Stat. 35, 977, 980.

The court was of opinion that by force of the Act as amended the suit had abated and dismissed the bill. The case is here on the plaintiff's appeal. Two questions are raised: First, whether the suit has abated by reason of the cited amendment to the section of the Act under which the suit was brought; and second, if not, then in entering judgment upon what date or dates and, accordingly, at what rates of, exchange should the plaintiff's claim be transmuted from marks into dollars.

Consideration of the second question will depend on the disposition of the first.

By Subdivision (e) of the Act of June 5, 1920, amending Section 9 of the Trading with the Enemy Act, Congress provided that:

"(e) No money or other property shall be returned nor any debt allowed under this section to any person who is a citizen or subject of any nation which was associated with the United States in the prosecution of the war, unless such nation in like case extends reciprocal rights to the citizens of the United States; nor in any event shall a debt be allowed under this section unless it was owing to and owned by the claimant prior to October 6, 1917, and as to claimants other than citizens of the United States unless it arose with reference to the money or other property held by the Alien Property Custodian or Treasurer of the United States hereunder."

We are concerned only with the last paragraph. In determining whether he has qualified under the terms of this provision, it is pertinent to note that the plaintiff admits that he is not a citizen of the United States. He concedes that the claim on which he is seeking to recover did not arise with reference to or out of money or other property held by the Alien Property Custodian or the Treasurer of the

United States, and that, had he brought this suit after the Act of June 5, 1920, he could not prevail. The plaintiff does not deny that the amendment is retroactive but says—and this is all he says—that Congress did not intend by the amendment to abate a suit commenced before its enactment. As this question arises under the Act of June 5, 1920, we shall first address ourselves to the statute to which that Act is an amendment.

This statute—Trading with the Enemy Act—as originally enacted was an announcement by the United States of the manner in which it proposed to exercise its sovereign right to seize property not of an enemy government alone but of its subjects. Having thus asserted its right of seizure, the government, had it chosen, could have stopped there and have made no provision for the release of seized property either to its owner or to anyone else. But Congress was inclined to be generous and, accordingly, provided by Section 9 of the Act two things: First, that any person "not an enemy, or ally of enemy," claiming any interest, right or title in any money or property which may have been paid or conveyed to the Alien Property Custodian and held by him or by the Treasurer of the United States; or, second, that any such person "to whom a debt may be owing from an enemy, or ally of enemy, whose property" shall have been conveyed or paid to the Alien Property Custodian and held by him or by the Treasurer of the United States, may assert his interest or right in the property or fund so held or recover payment of a debt out of the same by one of two procedures there prescribed. Until Congress had so acted, a person having an interest in property seized, or having a claim against the owner of property seized had no right to assert it against the property in the hands of the Alien Property Custodian or against the proceeds of its sale in the hands of the Treasurer of the United States. When Congress did so act, a claimant or creditor had such a right, but only so long as Congress saw fit to continue it. The opportunity which Congress afforded one claiming an interest in or asserting a debt against seized property was more in the nature of a privilege than a right. But whether a right or a privilege it was created and conferred by Congress and continued only by its grace. The statute did not vest this right or privilege in a claimant to the property or in a creditor of a debtor whose property had been seized in the sense that he might not be divested of it when and in any manner Congress might prescribe. We need not decide whether the procedures provided by Section 9 were against the government or against an agent of the government. Whether one or the other they were procedures or actions which but for the assent of the government could not have been brought, and being actions subsisting solely by its consent, they could be withdrawn as readily as they were granted. And so, as conditions changed from war to peace, Congress, for reasons of its own, chose to change the statute. And this it did under the Act of June 5, 1920 by withdrawing from creditors, not citizens of the United States, the right which theretofore it had given them to recover against property of their debtors which had been seized by the Alien Property Custodian, leaving to those who are not citizens of the United States only

the right to assert a claim against property of an alien enemy which has arisen "with reference to the money or other property" seized. Thus Congress changed its mind and decided to hold property and money seized under a war measure and refused thereafter to release and disburse it to claimants of one class. Obviously, this change in the law was made to give a preference to citizens of the United States and thereafter to hold what remained of seized money and property for future disposition. That legislation of this character was wholly within the power of Congress cannot be questioned. Originally, the legislation prescribed the conditions upon which the government consented in a measure to waive its sovereignty. Its provisions were liberal. Yet it contained no stipulation that the privileges granted should not thereafter be modified or should not be withdrawn in part or in whole. Subsequently, the legislation restricted these privileges and correspondingly limited the government's waiver of sovereignty. Beers v. Arkansas, 61 U. S. (20 How.) 527, 15 L. Ed. 991.

Applying these principles to the pendency of the action at bar, we are of opinion that if Congress had intended to preserve to claimants the privilege of continuing suits begun before the amendment it would have said so. Not having said so, we must assume that Congress meant only what it said and that it intended to do what its words plainly indicate, namely, to withdraw from "claimants other than citizens of the United States" the privilege theretofore given them unless their claims arose "with reference to the money or other property" seized and held. Kogler is not a citizen of the United States. His claim did not arise with reference to or out of such money or property. It arose with reference to or out of a contract between Chillingworth and himself. As a simple contract creditor Kogler has no interest in the property of his debtor whether that property be in the debtor's own hands or be transferred to the possession of another. Pusey & Jones Co. v. Hanssen, 43 Sup. Ct. 454, 67 L. Ed. ——. Therefore, in any aspect Kogler has failed under the provisions of the Act as amended to qualify as a claimant to proceed against property of his debtor seized by the Alien Property Custodian.

We are of opinion that the learned trial judge was right in dismissing the bill and that the decree below must be affirmed.