## GRAY et al. v. JACOBSEN et al.

(Court of Appeals of District of Columbia. Submitted April 5, 1926. Decided June 1, 1926. Motion for Rehearing Denied July 10, 1926.)

No. 4403.

**1. Subrogation ⬅️22.**

As between cotenants alone, one paying another's share of taxes on common property to prevent sale of whole is subrogated to lien of taxing power on interest of defaulting cotenant.

**2. Subrogation ⬅️1.**

Subrogation is not a matter of strict right, but is purely equitable in nature.

**3. Equity ⬅️60.**

Where opposing equities are otherwise equal, the first in point of time will be preferred.

**4. Estoppel ⬅️72.**

Where one of two innocent persons must suffer, the one whose fault caused the exigency must bear the loss.

**5. Mortgages ⬅️151(1)—Cotenants held not entitled to lien for taxes paid on cotenant's interest superior to mortgage of such interest.**

Where cotenants employed common agent, who distributed all proceeds of property, certain cotenants, who paid taxes on interest of another, yet permitted without protest distribution to him of his share of income, *held* not entitled to lien on such cotenant's interest superior to lien of mortgagees of such interest.

Appeal from the Supreme Court of the District of Columbia.

Bill of interpleader. From a decree in favor of Charles Jacobsen and others, Mary E. S. K. Gray and others appeal. Affirmed.

G. E. Sullivan, of Washington, D. C., for appellants.

F. S. Tyler and S. D. Willis, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal from a decree in an interpleader cause, involving the proceeds of certain real estate sold under a trust deed. The facts in the case are stipulated upon the record.

On June 17, 1901, William Lambell Kimmell was seized in fee of an undivided one-fourth interest in certain real estate situate within the District of Columbia, and on that day he executed a deed of trust conveying the same to trustees, to secure the payment of 10 promissory notes of varying amounts, aggregating $3,493.05, payable to the order of Maurice Kelly within two years after date. The deed of trust was duly recorded in the land records of the District. On July 22, 1920, Kimmell died, without having paid any of the notes.

At the time when the deed of trust was executed, and during all of the time in question, the appellant Mrs. Gray was the owner of an undivided one-half interest in fee in said property, and the remaining undivided one-fourth interest in fee was owned by the other appellants as heirs of Andrew J. Kimmell, deceased. Continuously from and after the date of said trust deed in 1901, and up to the time of his death in 1920, said William Lambell Kimmell received one-fourth of the rents and profits of the premises, and thereafter his heirs continued to receive one-fourth of such rents and profits until the sale of the same; all of the rents and profits for the entire property having been collected by a single general agent, employed and designated by all of the owners of said property, which agent remitted to each owner his respective share of the rents and profits as collected. During this time William Lambell Kimmell did not pay, nor did any one pay for him, any part of his one-fourth

share of the taxes assessed upon the property, nor did his heirs make any such payments after his decease; but all of the taxes assessed thereon, including penalties and costs, were paid by the other tenants in common. During said period the property as a whole was repeatedly sold at delinquent tax sales and redeemed by said cotenants with their own funds.

On May 15, 1923, the surviving trustee appointed by the trust deed sold the mortgaged one-fourth interest in the property, realizing therefor the sum of $3,500, less expenses, amounting to $307.92. The appellants thereupon alleged that the taxes paid by them upon said mortgaged share of the property amounted, with interest, to $2,985.-57, and they demanded full payment of this sum from said proceeds. Their claim was based upon the contention that when one of several cotenants omits to pay his share of taxes upon the common property, where such taxes constitute a statutory lien upon the whole property, and where the entire property of all the cotenants may be sold under said tax lien and their title thereby destroyed, they are not compellable to stand by and permit such disaster, but have the right to save themselves by paying the whole tax, including the share of the defaulting cotenant, and in such event they are subrogated to the lien of the taxing power upon the interest of the defaulting cotenant.

This claim, if allowed, would consume the entire net proceeds of the sale, to the exclusion of the notes secured by the trust deed. The claim was disputed by the note holders, whereupon the trustee instituted this interpleader, making all of the claimants defendants, for an adjudication of their conflicting claims. The lower court held against the claims of the cotenants, and decreed that the proceeds aforesaid should be paid upon the indebtedness secured by the trust deed, from which decree this appeal was taken.

[1, 2] We do not disagree with the proposition stated by appellants, provided it be limited to controversies arising between the cotenants alone. But where the rights of other parties are concerned, the general rule is subject to important exceptions. In such cases emphasis is laid upon the principle that subrogation is not a matter of strict right, but is purely equitable in its nature, dependent upon the facts and circumstances of each particular case, and that it will not be enforced when it would be inequitable to do so, or where it would work injustice to others

having equal equities, or operate to defeat legal rights. As was said by Finch, J., in Acer v. Hotchkiss, 97 N. Y. 402, "The doctrine of subrogation is a device to promote justice. We shall never handle it unwisely, if that purpose controls the effort, and the resultant equity is steadily kept in view."

[3, 4] Moreover, it should be remembered that, where opposing equities are, otherwise equal, the one which is prior in point of time is to be preferred; and, where one of two innocent persons must suffer a loss, the one whose fault causes the exigency must in general bear the loss. 25 R. C. L. 1321, 1322.

[5] When these considerations are applied in the instant case, they lead to the conclusion that the claim of the cotenants is lacking in equity. For many years they, together with the defaulting cotenant, employed a joint agent to collect the rents and profits of the entire estate, and to pay the same over to them in their proportionate shares, without making any provision for the payment of the taxes from the proceeds. They knew that William Lambell Kimmell was impecunious and insolvent, yet they permitted their joint agent to disburse the entire income from the property, knowing that such a course would result in a default of the taxes upon the mortgaged interest. The cotenants never informed the noteholders of such defaults, nor does it appear that the latter ever knew that the cotenants were paying more than their share of the taxes.

We think that, under these circumstances, it would be inequitable to give the claims of the cotenants priority over those of the mortgage creditors. The tax claims should rather be treated like differences of rents and profits arising between the cotenants alone. In such cases it has been held that the lien of a prior mortgage executed by one cotenant is superior to the claims of the other cotenants for rents and profits. McArthur v. Scott (C. C.) 31 F. 521. As to subsequent incumbrances, see Burns v. Dreyfus, 69 Miss. 211, 11 So. 107, 30 Am. St. Rep. 539; Omohundro v. Elkins, 109 Tenn. 711, 71 S. W. 590. It is true that the lien for rents and profits is or may be a secret lien, but the same may be said of the claim of cotenants for taxes paid by them upon the joint estate.

We are of the opinion, therefore, that the lower court was right in awarding the mortgage claims priority over the claims of the cotenants. Its decree is therefore affirmed, with costs.