SYNTHETIC PATENTS CO., Inc., v. SUTHERLAND, Alien Property Custodian et al.

Circuit Court of Appeals, Second Circuit.
November 14, 1927.

No. 23.

1. War ⬤═12—American corporation, failing to withhold income taxes on remittances to nonresident aliens, held not entitled to recover such taxes out of property seized by Custodian (Income Tax Act 1913, § 2, E; Revenue Act 1916; Trading with the Enemy Act, § 9, as amended by Act June 5, 1920 [Comp. St. § 3115½e]).

Where an American corporation made remittances to nonresident aliens under certain contracts with them, without withholding income taxes due on such remittances, as required by Income Tax Act 1913, § 2, E (38 Stat. 169), and Revenue Act 1916 (39 Stat. 756), and was thereafter compelled to pay such taxes to the government, held, that it was not entitled to recover under Trading with the Enemy Act, § 9, as amended by Act June 5, 1920 (Comp. St. § 3115½e), amount of such tax payments out of property seized by Alien Property Custodian, in absence of excuse for failure to comply with statute.

2. War ⬤═12—Word "debt," in statute authorizing recovery out of property seized by Custodian, must be liberally construed (Trading with the Enemy Act, § 9, as amended by Act June 5, 1920 [Comp. St. § 3115½e]).

Word "debt," in Trading with the Enemy Act, § 9, as amended by Act June 5, 1920 (Comp. St. § 3115½e), providing for suit to establish a debt owing from alien against property seized by Alien Property Custodian, must be liberally construed.

3. War ⬤═12—Income taxes, which American corporation was compelled to pay in 1919 on remittances to nonresident aliens, held not recoverable as "debt owing or owed," within statute (Income Tax Act 1913, § 2, E; Revenue Act 1916; Trading with the Enemy Act, § 9, subd. [e], as amended by Act June 5, 1920 [Comp. St. § 3115½e]).

Even if American corporation, which made remittances to nonresident aliens without withholding income taxes due thereon, as required by Income Tax Act 1913, § 2, E (38 Stat. 169), and Revenue Act 1916 (39 Stat. 756), was entitled to reimbursement from such aliens for the amount of income taxes it was required to, and did pay, on March 6, 1919, it was not entitled to recover amount of such tax payments, under Trading with the Enemy Act, § 9, subd. (e), as amended by Act June 5, 1920 (Comp.

St. § 3115½e), "as debt owing or owed," out of property seized by Alien Property Custodian, since obligation to pay the taxes did not accrue prior to October 6, 1917.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Debt Owed.]

**4. War ⊜⇒12—Statute prohibiting recovery of debts out of property seized by Custodian, unless accruing before date specified, destroyed court's jurisdiction of suits on claims arising after such date (Trading with the Enemy Act, § 9, subd. (e), as amended by Act June 5, 1920 [Comp. St. § 3115½e]).**

Act June 5, 1920, amending Trading with the Enemy Act, § 9, subd. (e), Comp. St. § 3115½e, providing that no debt shall be paid out of property seized by Alien Property Custodian, unless it was owing to claimant prior to October 6, 1917, destroyed court's jurisdiction to adjudicate pending suit on claim accruing after October 6, 1917.

**5. United States ⊜⇒125(2)—Suit to collect debt out of property seized by Custodian is "suit against United States" (Trading with the Enemy Act, § 9, as amended by Act June 5, 1920 [Comp. St. § 3115½e]).**

A suit against the Alien Property Custodian to collect a debt out of named property seized by Custodian under Trading with the Enemy Act, § 9, as amended by Act June 5, 1920 (Comp. St. § 3115½e), is substantially a suit against the United States.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit against the State.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Synthetic Patents Company, Inc., against Howard Sutherland, as Alien Property Custodian, and others. Decree for plaintiff, and certain defendants appeal. Reversed.

Emory R. Buckner and Charles H. Tuttle, U. S. Attys., both of New York City (Robert W. Bonynge, of New York City, of counsel), for appellants.

Lyttleton Fox and H. H. Ramsay, both of New York City, for appellee Synthetic Patents Co., Inc.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. [1] The decree entered below against the appellants directs the Treasurer of the United States to pay appellee, out of the proceeds of the sale of property formerly owned by Messrs. Duisberg, Hess and Mann, and later seized by the Alien Property Custodian pursuant to the Trading with the Enemy Act (Comp. St. § 3115½a et seq.), the sum of $344,102.58, with interest. Duisberg, Hess, and Mann were nonresident German nationals and owned all the capital stock of the appellee, an American corporation, and also all the capital stock of the Bayer Corporation, another American corporation. These stocks of both companies, and rights created by virtue of certain contracts between Duisberg, Hess, and Mann and the appellee, were seized on January 15, 1918, by virtue of the provisions of the Trading with the Enemy Act. After seizure, the nominees of the Alien Property Custodian were elected directors and officers of the appellee and of the Bayer Company. On December 12, 1919, in accordance with the terms of the same act, this stock and the contract rights were sold to the Sterling Products Company, Inc., for $5,000,000, and delivery was made February 4, 1918. The decree rests upon the claim that in 1913, 1914, 1915, 1916, and 1917, Duisberg, Hess, and Mann were entitled to and received payments, pursuant to a contract existing between them and the appellee whereby 75 per cent. of all the moneys which the appellee should receive from any source for the right to the use of patents, formulæ, processes, trade-marks, and trade-names owned or controlled by the appellee, or in which the appellee had any interest, should be paid to them. Another contract between the same parties provided that Duisberg, Hess, and Mann should receive $1,000 for each and any new patents or formulæ emanating from them and used or acquired by the appellee. A further sum was said to have been paid on account of a loan of money by Duisberg, Hess, and Mann to appellee.

Under the internal revenue laws (39 Stat. 756) it was the duty of the appellee to withhold the amount of the income taxes due on each of said remittances before making the payment to Duisberg, Hess, and Mann, and to pay such sums to the United States, and it became personally liable in the event of its failure to make such deductions for the amount of taxes due to the United States government. The complaint alleges in substance that, in each of the years referred to, sums accrued and were paid by the appellee to Duisberg, Hess, and Mann, and that the appellee inadvertently failed to withhold such income taxes due as contemplated by the statute, or any part thereof, and that Duisberg, Hess, and Mann did not pay the income taxes to the government. After the sale of the stock to the Sterling Company, the appellee filed a delinquency return of the amount due as taxes on the remittance for the years in question. The government

required the appellee to pay, on March 6, 1919, these income taxes on the sums accruing and paid to Duisberg, Hess, and Mann. The demand is for payment by the United States out of Duisberg, Hess, and Mann's former property interest as of the dates when the moneys were paid to Duisberg, Hess, and Mann, with interest.

The theory of recovery, by the logic of the complaint, is because of failure of the appellee to withhold enough to meet the taxes, and paying it to Duisberg, Hess, and Mann, they became, each time they received a payment, indebted to the appellee for the amount of the taxes due the government, and which should have been paid before making such remittance. It will be noted that the action is not based upon the theory of recovering for a debt due by reason of the payment of March 6, 1919, but to recover the amount of the taxes accruing on said remittance as of the date on which each remittance went forward. It was the neglect of the appellee to withhold the amount of the tax and pay the United States that required it to subsequently pay by command of the statute.

A special master, who heard the evidence supporting this claim, found for the appellee, and this result has been confirmed by the District Judge. The suit is based upon section 9 of the Trading with the Enemy Act, as amended by Act June 5, 1920 (Comp. St. § 3115½e), which provides:

"That no money or other property shall be returned nor any debt allowed under this section to any person who is a citizen or subject of any nation which was associated with the United States in the prosecution of the war, unless such nation in like case extends reciprocal rights to citizens of the United States; nor in any event, shall a debt be allowed under this section unless it was owing to and owned by the claimant prior to October 6, 1917, and as to claimants other than citizens of the United States unless it arose with reference to the money or other property held by the Alien Property Custodian or Treasurer of the United States hereunder."

The appellee does not deny that the remittances were subject to the income taxes levied.

The right of one who pays the tax—by command of the statute (Income Tax Act Oct. 3, 1913; 38 Stat. 169, subd. E) because of failure to withhold the tax due at the source—to recover from a nonresident alien the amount of the tax thus paid, has not been considered by the courts of this country. The English courts have dealt with a similar

question, as where an occupier of land paid, during the course of his occupancy, the landlord's property tax as well as the full rent as it became due to the landlord, without claiming any deduction for the amount of the taxes so paid.

Under the English statute, the tenant could pay the landlord's property tax, and was authorized to deduct the same from the next rent due the landlord. But the court said that paying it without deducting it therefrom made such tax payments voluntary, and the action could not be maintained for its recovery. Denby v. Moore, 1 Barn. & Ald. 123. In another case, land taxes were paid, but not deducted from the rent of the current year. An argument was presented that such payment constituted payment of money for the landlord, which in good conscience the landlord was bound to allow on the rent. But this plea was denied, and the landlord was held not bound to repay the taxes. Andrew v. Hancock, 1 Brod. & Bing. 37. Where a husband, separated from his wife, agreed to pay her a specific sum a year quarterly, clear of deductions, and where he failed to deduct income tax from the payment of the allowance, the husband was later refused the right to deduct income tax in respect of all payments made from the arrears. The court held that he could deduct the income taxes, except those already paid or in arrears. Countess of Shrewsbury v. Earl of Shrewsbury, 27 T. L. R. 100.

The right to deduct income taxes from future payments of an annuity payable to a wife was recognized, and at the same time a deduction of income tax from payments previously made was refused. Warren v. Warren, 72 L. T. R. 628. In Galashiels Provident Building Society v. Newland, 20 Session Cases (4th Series) 821, the English court, dealing with the deduction of income tax under the provision of the statute, held that, if a debtor makes a payment of interest without deducting the income taxes, he would lose the right to deduction in respect to such interest.

Under the statute here considered, where the debtor is obliged to deduct the income tax for a nonresident alien, and when he fails to do so becomes personally liable, the reason for forbidding a recovery becomes stronger. The obligation imposed is statutory. There is no provision of statute which gives him the right to recover from his creditor, having paid the tax under such circumstances. The appellee for five years neglected to withhold the amounts sufficient to pay the tax, or to pay it. It offered no excuse, but

admits its failure to obey the statute, and now seeks to recover the taxes imposed upon it by the terms of the statute. This it may not do.

[2, 3] There is, however, another reason why the appellee must fail. It is true that the word "debt," as used in section 9, must be given a liberal interpretation. Miller v. Robertson, 266 U. S. 243, 45 S. Ct. 73, 69 L. Ed. 265. But, assuming that there was an obligation on the part of Duisberg, Hess, and Mann to reimburse the appellee for the moneys it expended in payment of this tax imposed by the statute, that obligation could not and did not arise prior to October 6, 1917, for the amount of the taxes were paid March 6, 1919, and subdivision (e), § 9 of the Trading with the Enemy Act, as amended by Act June 5, 1920 (Comp. St. § 3115½e), provides that in no event shall payment of a debt be made under this section unless it was owing to and owed by the claimant prior to October 6, 1917. This was neither owing nor owed by appellee until it was paid.

[4] But it is argued that subdivision (e), § 9, of the Trading with the Enemy Act, was not a part of the original act, and since the present suit was instituted prior to June 5, 1920, in which subdivision (e) was first inserted, the limitation is not applicable to this suit. Under the original act, such debts as were owed by or owing to claimants could be recovered under section 9. By section 9 of the original act, only such debts as may be owing to an enemy were recoverable under its provisions, and the debts recoverable were limited to those owing at the date of the passage of the act. The transactions out of which debts may arise were therefore prohibited, except upon licenses from the President.

[5] Debts accruing subsequent to October 6, 1917, were not payable out of funds in the possession of the Alien Property Custodian. Springer v. Garvan (D. C.) 276 F. 595. In Kogler v. Miller (C. C. A.) 288 F. 806, the court held that the right or privilege to recover money or property seized by the Alien Property Custodian exists only by virtue of the consent of Congress, which may be and was withdrawn, and it did so by section 9 of the act, as amended by Act June 5, 1920, by withdrawing from creditors not citizens of the United States the right, which theretofore it had given them, to recover against property and other creditors which had been seized by the Alien Property Custodian, leaving to defendants, who are citizens of the United States, only the right to assert a claim against the property of an alien which has

arisen with reference to the money or other property seized. Subsequently restoring these privileges correspondingly limits the government's waiver of sovereignty. Beers v. State of Arkansas, 20 How. (61 U. S.) 527, 15 L. Fd. 991. A suit against the Alien Property Custodian to collect a debt out of named property is substantially a suit against the United States. Banco Mexicano v. Deutsche Bank, 263 U. S. 591, 44 S. Ct. 209, 68 L. Ed. 465. The appellee has invoked section 9, and is limited by the statute in its endeavor to recover. Since the claim here did not arise prior to October 6, 1917, there would be no jurisdiction to adjudicate in respect thereto. Sampeyreac v. United States, 7 Pet. 222, 8 L. Ed. 665; Tennessee v. Sneed, 96 U. S. 69, 24 L. Ed. 610; Federal Land Bank of Omaha v. U. S. National Bank (C. C. A.) 13 F.(2d) 36. The right to recover is limited to conditions laid down in section 9, and since the alleged debt was not owing to or owed by the appellee prior to October 6, 1917, the appellee may not recover. Banco Mexicano v. Deutsche Bank, supra.

Decree reversed.