McGRATH, Attorney General, v. DRAVO CORPORATION.

No. 10124.

United States Court of Appeals Third Circuit.

Argued April 4, 1950.

Decided July 26, 1950.

Robert B. McKay, Washington, D. C., Harold I. Baynton, Acting Director, Office of Alien Property, Washington, D. C., Edward C. Boyle, United States Attorney, Pittsburgh, Pa., James L. Morrisson, and Ralph S. Spritzer, Washington, D. C., for appellant.

Judson A. Crane, Pittsburgh, Pa. (Moorhead & Knox, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

This is a suit by the Attorney General of the United States, as successor to the Alien Property Custodian, to recover accrued royalties alleged to have vested in the United States by virtue of Vesting Order Number 201, 8 F.R. 625,[1] issued pursuant to the Trading With the Enemy Act, 40 Stat. 411, as amended, 50 U.S.C.A.Appendix, § 1 et seq.

On May 19, 1937, the defendant, Dravo Corporation, a Pennsylvania corporation, entered into a written contract with Ludwig Kort, a resident of Hanover, Germany, under which Kort, as holder of two United States letters patent for a ship propeller device,[2] licensed the defendant to manufacture and sell the device in consideration of a promise to pay the patentee royalties as stipulated in the license. During the period from January 1, 1939 to April 15, 1941, royalties accrued in the amount of $32,214.-69 which were remitted by Dravo to Kort in Germany. Dravo failed to deduct income taxes from that sum as it was required to do by Sections 143(b) and (c) of the Internal Revenue Code, 53 Stat. 61, and as amended, 26 U.S.C.A. § 143(b, c).[3] The amount of the taxes was $5,214.88.[4]

1. The vesting order is quoted infra. note 6.

2. The patents are United States Patents Nos. 1,759,511 and 2,030,375.

3. The pertinent provision of the statute as it existed at the end of the 1939 tax year is as follows: "All persons, in whatever capacity acting * * * having the control, receipt, custody, disposal, or payment of interest * * * dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income * * * of any nonresident alien individual * * * shall * * * deduct and withhold from such annual or periodical gains, profits, and income a tax equal to 10 per centum thereof. * * *" The percentage to be deducted was increased by amendments to the statute from time to time.

4. This figure is not in dispute.

Between April 16, 1941 and June 4, 1942 additional royalties in the amount of $15,-690.00 accrued. This amount was credited to the account of Kort on Dravo's books but was never remitted to Kort.[5] On March 12, 1942 Dravo paid to the Bureau of Internal Revenue $5,214.88, which had been assessed against Dravo on account of the income of $32,214.69 which Dravo previously had remitted to Kort without deduction. On or about March 12, 1942 Dravo charged the $5,214.88 assessment to Kort's account which at that time consisted entirely of royalty credits accrued subsequent to the period for which the tax had been assessed.

On October 2, 1942 the Alien Property Custodian issued Vesting Order No. 201,[6] which declared "All right, title, interest, including all accrued royalties * * *" in the Kort patents to be vested in the Alien Property Custodian for the benefit of the United States. Pursuant to this order the Custodian demanded the royalties accruing between April 16, 1941 and June 4, 1942 in the amount of $15,690.00. Dravo paid over to the Custodian only the sum of $10,475.12, having already deducted from Kort's account the tax assessment previously referred to in the amount of $5,214.88. Dravo refused to pay the latter sum to the Custodian.

The Custodian then brought the instant suit under Section 17 of the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 17, to compel Dravo to pay the amount $5,214.-88 which the Custodian alleged was wrongfully deducted from the accrued royalties. There being no dispute as to the essential facts, the court below entered a summary judgment for the defendant. 83 F.Supp. 122.

The decision below was based upon General License No. 5, 8 C.F.R. § 511.105, issued by the Secretary of the Treasury [7] on May 10, 1940 which reads as follows: "A general license is hereby granted authorizing the payment from any blocked account to the United States or any agency or instrumentality thereof or to any state, territory, district, county, municipality or political subdivision in the United States, of customs duties, taxes, and fees payable thereto by the owner of such blocked account." The court below held in effect that the payment of the assessed tax out of the Kort account was proper under the general license and such a payment is a defense to this action.

The United States collected the sum of $5,214.88 from Dravo under Section 143(c) of the Internal Revenue Code which makes withholding agents liable for any tax which should be withheld.[8] The plaintiff con-

---

5. Kort's account was blocked on June 14, 1941, pursuant to Executive Order, No. 8389, 5 F.R. 1400, as amended by Executive Order, No. 8785, 12 U.S.C.A. § 95a note, 6 F.R. 2897.

6. The vesting order in pertinent part reads as follows, 8 F.R. 625:
   "Under the authority of the Trading with the Enemy Act, as amended, and Executive Order No. 9095, as amended, 50 U.S.C.A.Appendix, § 6 note, and pursuant to law, the undersigned, after investigation, finding that the property described as follows:
   'All right, title, interest, including all accrued royalties and all damages and profits recoverable at law or in equity from any person, firm, corporation or government for past infringement thereof, in and to the patents identified in volumes 1, 2, 3 and 4 of Exhibit A attached hereto and made a part hereof.'

is property in which nationals of a foreign country or countries have interest, and having made all determinations and taken all action, after appropriate consultation and certification, required by said Executive Order or Act or otherwise, and deeming it necessary in the national interest, hereby vests such property in the Alien Property Custodian, to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States."
   The Kort patents were identified in the exhibit which was attached.

7. Pursuant to Executive Order No. 8389, 5 F.R. 1400, 12 U.S.C.A. § 95a note.

8. 26 U.S.C.A. § 143(c) provides: " * * * Every such person [withholding agent] is hereby made liable for such tax. * * *"

tends that General License No. 5 was not intended to be applied under the instant circumstances despite the fact that the sum of $5,214.88 constituted the payment by Dravo of a tax "payable * * * by [Kort as] the owner of the blocked account." General License No. 5 did authorize the payment of income taxes due to the United States from Kort's account which was a chose in action in Dravo's hands. Section 143(c) made Dravo liable for Kort's taxes and the plaintiff insists that the solution to the problem in the instant case lies in the fact that the payment of income taxes by Dravo did not create a debt due from Kort to Dravo which could be asserted by the latter as a set-off. The Attorney General points out that Sections 143 and 211 of the Internal Revenue Code impose primary liability on both the withholding agent and the nonresident alien[9] but the United States is not required to look to the nonresident alien for the payment of taxes rather than to the withholding agent. The plaintiff relies heavily on the decision in Synthetic Patents Co. v. Sutherland, 2 Cir., 1927, 22 F.2d 491, certiorari denied 276 U.S. 630, 48 S.Ct. 324, 72 L.Ed. 741.

Dravo's argument we think may be accurately stated as follows. The tax due on the royalties, though it could be collected by the United States from either Dravo or Kort, was, as between Dravo and Kort, Kort's obligation. When Dravo paid the tax which, as between Dravo and Kort was due from Kort, Kort became indebted to Dravo in the amount of $5,214.88. Dravo extinguished this debt by charging Kort's account with the amount of $5,214.88. This charge was made prior to the date of the vesting order. Kort could not have maintained a claim against Dravo for the $5,-214.88 and the Alien Property Custodian must be deemed to stand in Kort's shoes and therefore the Attorney General, vice the Custodian, is in no better position than Kort would be if he were bringing suit to recover the amount specified. Kort could not recover from Dravo, for to permit him to do so would be to allow him to unjustly enrich himself at Dravo's expense; therefore, the plaintiff in the instant case is not entitled to effect recovery.

Dravo refers to the law of Pennsylvania whereby a transferee who discharges a State tax liability is entitled on general equitable principles to contribution from another transferee for the latter's share, In re Mellon's Estate, 347 Pa. 520, 525, 32 A.2d 749, 757. See also Craig v. Lininger, 61 Pa.Super. 339. Dravo also asserts that under the law of Pennsylvania it was subrogated to the right of the United States to collect the taxes out of Kort's royalty account, citing Restatement, Restitution § 162, quoted and applied in Gladowski v. Felczak, 346 Pa. 660, 31 A.2d 718, 151 A.L.R. 418.[10]

Dravo, as another arrow in its quiver, takes the position that it was nothing more than a surety for Kort's debt and it was entitled to indemnify itself from accruing royalties, citing Craigheard v. Swartz, 219 Pa. 149, 67 A. 1003. The question as to whether or not the Attorney General should recover from Dravo the amount here sought is a federal question and the federal law must govern it. Though we think it must be conceded that United States District Courts may apply the doctrine of unjust enrichment, ex aequo et bono, in order to prevent injustice, we must state that we can find no federal case in point. We do not think, however, that the federal law would differ greatly from that of the States in this connection. Cf. E. F. Drew & Co. v. Southern Grocery Stores,

9. Internal Revenue Code, 52 Stat. 527, Section 211(a) (1), as amended, 26 U.S. C.A. § 211(a) (1) (A).

10. Dravo also relies on that part of Section 143(c) of the Internal Revenue Code, 26 U.S.C.A. § 143(c) which provides that every person who is required to deduct and withhold any tax under Section 143 is indemnified against the claims and demands of any person for the amount of any payment "made in accordance with the provisions of this section". This provision, however, will not aid Dravo since the payment made by it to the United States was not "made in accordance with the provisions" of Section 143.

Del.1935, 7 W.W.Harr. 356, 183 A. 511. The cited case suggests an analogy, even if remote. We think it is manifest, however, that the Attorney General, *vice* the Custodian, must stand in Kort's shoes. It can be pointed out, of course, that if Dravo had fulfilled the requirements of Section 143 of the Internal Revenue Code and had not, however, inadvertently, forwarded the royalties to Kort without withholding the tax, the sum here sought would have come into the hands of the Custodian under the vesting order. But the short answer to the Attorney General's assertion is that Kort's and Dravo's rights in respect to each other were settled before the vesting order was made. In our opinion Kort would not have had the standing to maintain a suit against Dravo to recover from it the amount of royalty which it had off-set against the tax. Since the right of the Attorney General to maintain a suit for recovery is no better than Kort's, we are of the opinion that the Attorney General cannot recover.

Synthetic Patents Co. v. Sutherland, supra, does stand for the general proposition that taxes paid by a withholding agent in satisfaction of a tax obligation due also from a non-taxable resident alien will not create a set-off which may be asserted by the withholding agent against the Alien Property Custodian. The cited case can of course be distinguished by the fact that the alien's property had passed into the hands of the Custodian and had actually been sold by him prior to the time the withholding agent attempted the set-off.

In conclusion we state that we cannot agree with the court below that General License No. 5 gave a defense to Dravo against the instant action. The license did nothing more than permit sums to be paid from a blocked account in satisfaction of taxes.

Accordingly the judgment appealed from will be affirmed.