**A. GUSMAN, Inc. v. McGRATH, Atty. Gen.**

Civ. A. No. 5156-49.

United States District Court
District of Columbia.

Dec. 19, 1950.

A. K. Shipe, of Washington, D. C., and Charles Scribner, of New York City, for the plaintiff.

Daniel G. McGrath, of Washington, D. C., for the defendant.

HOLTZOFF, District Judge.

This action is before this court on cross motions by the plaintiff and the defendant for summary judgment. The suit is brought against the Alien Property Custodian to recover an alleged debt due to the plaintiff from an alien enemy whose property had been seized by the Alien Property Custodian. The facts briefly are as follows.

The plaintiff, an American corporation, has paid certain royalties from time to time to a German concern, which is the alien enemy involved in this case. The plaintiff failed to comply with the provisions of the Internal Revenue Code requiring it to withhold and pay to the United States income taxes due from the alien on the moneys that the plaintiff was paying to that alien. Later the Alien Property Custodian seized the assets of the German concern and subsequent royalties were paid by the plaintiff to the Alien Property Custodian. The Bureau of Internal Revenue, upon discovery of the plaintiff's failure to pay the withholding taxes for prior years, demanded the money that should have been withheld and the tax so due was paid by the plaintiff. The plaintiff now seeks to recover from the Attorney General, as successor to the Alien Property Custodian, out of the assets seized from the German concern, the amount of the income tax so paid by the plaintiff and which was due from the German concern.

The statute that governs this matter is Section 34 of the Trading with the Enemy Act, U.S.C.A., Title 50, Appendix, § 34. That Section provides that any property or interest vested in or transferred to the Alien Property Custodian, or the net proceeds thereof, should be equitably applied by the Custodian to the payment of debts owed by the person who owned such property or interest immediately prior to its vesting or transfer to the Alien Property Custodian. In other words, Congress did not intend to deprive American creditors of their rights against the enemy alien by providing for the seizure of the property located in this country and belonging to the enemy alien. Congress expressly granted to such American creditors a remedy against the property in the hands of the Alien Property Custodian. There is, however, a limitation in the statute to the effect that "No debt claimed shall be allowed under this section if it was not due and owing at the time of such vesting or transfer". The purpose of the limitation is not apparent. It is, however, unambiguous and binding on this court.

The question to be determined, therefore, is two-fold: first, whether there is a debt due from the German concern to the plaintiff; and second, if so, whether it was due and owing at the time of the vesting or transfer of the German's property to the Alien Property Custodian.

It seems to the court that as soon as the plaintiff paid the entire amount of royalty to the German concern without deducting the withholding tax, an obligation immediately arose on the part of the German concern to refund the amount of the withholding tax to the plaintiff, provided the payment was made under a mistake of fact or mistake of law. It is well settled that if A pays to B by mistake an amount of money that A does not owe to B,

and payment is made without intention to make a gift, a quasi-contractual obligation arises at that instant to repay that amount in order to prevent unjust enrichment. This principle of law dates back to the famous English case of Moses v. Macpherlan, 2 Burr. 219, decided by Lord Mansfield. On this theory the obligation of the German concern to repay the amount of the withholding tax to the plaintiff arose on the date on which the full payment of the royalties was made by the plaintiff to the German concern, rather than on the date on which the tax was paid by the plaintiff to the United States, which was subsequent to the vesting.

The court does not agree with the plaintiff's theory that it has a right to enforce the claim by way of subrogation, because it is the view of the court that the claim by way of subrogation did not arise until the tax was paid by the plaintiff to the United States, which was at a date subsequent to the vesting and, therefore, not within the terms of the statute.

It is the court's view that there was a primary obligation on the part of the German concern to repay to the plaintiff the amount of the tax that the plaintiff had failed to withhold, provided the failure to withhold was based on a mistake, and that is a question of fact to be determined at the trial.

The conclusion reached by the court is supported by the decision of the Court of Appeals for the Third Circuit in McGrath v. Dravo Corp., 183 F.2d 709. True, the Second Circuit, in an opinion written by Judge Manton, reached the opposite conclusion, Synthetic Patents Co. v. Sutherland, 22 F.2d 491. The court feels that the reasoning in McGrath v. Dravo Corp., is the more sound of the two.

It seems clear to the court that as a matter of equity and good conscience, the plaintiff is clearly entitled to recover, and that if that money is not refunded to the plaintiff, the United States will be unjustly enriched. If this money is confiscated by the United States eventually, then in effect the United States will have received the withholding tax twice, once by the payment made by the plaintiff, and a second time by failing to refund that money out of the assets seized from the German concern. On the other hand, if this money is refunded to the plaintiff, justice will have been done, because the German concern obviously owes the taxes that should have been withheld, and there is an obligation running from the German concern to the plaintiff in that regard.

 It seems to the court, however, that the matter cannot be disposed of on a motion for summary judgment, because there is a question of fact whether the failure to deduct the withholding tax was due to a mistake, in which event the plaintiff would prevail, or whether it was done by arrangement between the parties, which would preclude the finding of a mistake.

For that reason the court will deny both motions for summary judgment.