A. GUSMER, Inc. v. McGRATH, Atty. Gen.

No. 11223.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 20, 1952.

Decided April 24, 1952.

Mr. Charles E. Scribner, New York City, of the Bar of the Court of Appeals of New York, *pro hac vice*, by special leave of Court, with whom Mr. John J. Beatty, III, Washington, D. C., was on the brief, for appellant.

Mr. Irwin A. Seibel, Atty., Department of Justice, with whom Asst. Atty. Gen. Harold I. Baynton and Mr. George B. Searls, Atty., Department of Justice, were on the brief, for appellee.

Messrs. George Morris Fay, U. S. Atty. at the time the record was filed, Charles M. Irelan, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., also entered appearances for appellee.

Before PRETTYMAN, PROCTOR and FAHY, Circuit Judges.

FAHY, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing on the merits appellant's complaint against the Attorney General of the United States, as successor to the Alien Property Custodian, appellee. The effect was to affirm a determination made by the Custodian under the Trading with the Enemy Act, 40 Stat. 411 (1917), as amended, 50 U.S.C.A.Appendix, § 1 et seq., particularly Section 34(e), rejecting a claim of appellant, plaintiff, against funds of an alien which the Custodian had vested.

The facts are not in dispute.[1] The plaintiff in 1933 entered into an arrangement with Chemische Werke Marienfelde-Richard Bosche, the alien, a German corporation, for. the right to use a secret process and trade-mark. For this right plaintiff paid $3,000 outright to the German corporation and also agreed to pay sales license fees. From 1933 to 1941 it paid such fees but failed to withhold, as required by 53 Stat. 60 (1940), as amended, 26 U.S.C. § 143 (1951), any part thereof for income tax purposes. Remittances to the alien were discontinued in 1941 as a consequence of Executive Order No. 8389, 5 F.R. 1400, as amended, 12 U.S.C.A. § 95a note, which prohibited, except as licensed, transactions involving property in which nationals of designated foreign countries, including Germany, had an interest. The unremitted fees then accrued to the alien's credit in the hands of plaintiff. In May, 1946, the Custodian, defendant's predecessor, vested the German corporation's interests. As a consequence the accrued fees were paid over by plaintiff to the Custodian. Plaintiff withheld, however, and shortly thereafter paid, the income taxes due the United States on these accrued fees.

In 1947 the Commissioner of Internal Revenue determined that plaintiff owed a deficiency of $13,363.88 for income taxes for the years 1933 to 1941 on the fees it had remitted to the alien during that period without withholding and paying such taxes. Plaintiff paid this sum on October 20, 1947. Thereafter $3,340.98 in penalties, and interest of $6,056.53, were also paid, making a total of $22,761.39. Plaintiff then filed its claim for this amount against the assets in the hands of the Custodian which had belonged to the German corporation. Upon rejection, the action below was instituted under the provisions of Section 34(e), supra.

Plaintiff's theory is that the alien was primarily responsible for the taxes and that payment of them by plaintiff was of an indebtedness owed by the alien for which its assets, vested by defendant's predecessor, are liable. Reliance is placed upon the provision of the Trading with the Enemy Act that property vested is to be equitably applied by the Custodian to the payment of debts owed by the person who owned the property immediately prior to its vesting, Section 34(a), supra. This provision, however, is qualified as follows,

"* * * No debt claim shall be allowed under this section if it was not due and owing at the time of such vesting * * *."

1. At an earlier stage of the proceedings plaintiff and defendant had each moved for summary judgment, which the District Court had denied because it then thought there was a genuine issue of fact which was material. See A. Gusman, Inc. [sic] v. McGrath, D.C.1950, 94 F. Supp. 724. Thereafter, however, the parties submitted the case to the court below without the introduction of further evidence and no point is now made which turns upon any issue of fact.

■ While there was a debt due and owing to the United States by the alien for the taxes, at the vesting time, and while the alien did own the property immediately prior thereto, there was no such debt due and owing to plaintiff by the alien at the time of vesting. Any debt obligation to plaintiff arose when plaintiff paid the taxes and this was subsequent to the vesting. Accordingly plaintiff may not claim repayment from the vested funds by reason of the statutory provision relied upon.

■ Plaintiff itself became indebted to the United States for the amount of the taxes because of its omission to withhold and pay them for the years prior to 1941. A person having control over the income of a non-resident alien, required, as was plaintiff, to deduct and withhold the amount due as income tax, is made liable for the tax. Sections 143(c), 144, Internal Revenue Code.[2] True, the United States might have resorted to the vested funds, rather than to plaintiff, because those funds were not relieved of the alien's tax liability by reason of the vesting, Section 36(a), supra. But this does not cause plaintiff, after paying the taxes in response to the lawful demand of the Commissioner, to acquire as to the alien a creditor status which relates back to a time prior to both the payment by plaintiff and the vesting.[3] See Synthetic Patents Co. v. Sutherland, 2 Cir., 1927, 22 F.2d 491 certiorari denied 1928, 276 U.S. 630, 48 S.Ct. 324, 72 L.Ed. 741, decided on comparable provisions of the Act in effect in 1918. We do not read McGrath v. Dravo Corporation, 3 Cir., 1950, 183 F.2d 709, as holding to the contrary. There the action was by the Custodian to recover from the withholding agent amounts which such agent had set off, prior to vesting, from the alien's funds in its hands, for payment of taxes due by the alien. The court held that the Custodian must be deemed to stand in the alien's shoes and since the alien could not recover neither could the Custodian.

This leaves for consideration plaintiff's contention that it became subrogated to the rights of the Collector of Internal Revenue. Plaintiff says, correctly, that the alien owed the taxes to the United States prior to the vesting and plaintiff paid them. Therefore, it argues, it is subrogated to these tax claims of the United States which were due and owing prior to the vesting and which therefore are debts for which the vested properties are liable under Section 34(a).

■ We do not reach the question whether the control which has been exercised by Congress over properties of enemy aliens, including the War Claims Act of 1948, infra, precludes subrogation, because in any event the right to subrogation is unavailable to the plaintiff in the circumstances of this case. Subrogation is governed by equitable principles as applied to the facts of each case. Gray v. Jacobsen, 1926, 56 App.D.C. 353, 13 F.2d 959, 48 A.L.R. 583. See American Surety Co. v. Bethlehem Nat. Bank, 1941, 314 U.S. 314, at page 317, 62 S.Ct. 226, 86 L.Ed. 241. While the plaintiff paid taxes for which the alien as well as itself was liable, and while prior to the vesting the assets which plaintiff seeks to reach were owned by the alien, nevertheless it was plaintiff's own omission of a statutory duty to withhold the taxes from funds in its hands which created the problem. It remitted those funds in full to the alien. The moneys from which it now seeks reimbursement have borne the full share of income taxes attributable to them. To require that they bear also those due for the years 1933–1941 would result in their depletion because of plaintiff's omission. Furthermore, Congress has prescribed certain public purposes for the vested properties. War Claims Act of 1948, 62 Stat. 1240 (1948), as amended, 50 U.S.C.A.Appendix, § 2001 et seq. Allowance of plaintiff's claim would diminish *pro tanto* the properties available for those purposes. In all these circumstances the dominant equities preclude a right of subrogation against these

---

2. 53 Stat. 60, 62 (1940), as amended, 26 U.S.C. § 143(c) (Supp. 1951). The effect of Section 144 is to make Section 143 applicable to foreign corporations.

3. We are not now confronted with any question as to the alien's independent obligation to plaintiff or as to assets not vested.

funds, even if the statute itself does not, as a substitute for plaintiff's failure to perform a statutory duty which if performed would have obviated its present claim. See Washington Mechanics' Sav. Bank v. District Title Ins. Co., 1933, 62 App.D.C. 194, 65 F. 2d 827.[4]

In view of our disposition of the case as it affects the taxes themselves it is not necessary separately to discuss the interest, as to which plaintiff can be in no better position. In this court plaintiff abandoned its claim for the penalties.

Affirmed.

4. It follows that plaintiff is not a successor in interest to the Collector by operation of law within the meaning of the last sentence of Section 34(a), supra.