**In the Matter of Earl R. MEYERS and Karin E. Meyers, Bankrupts.**

**INTERNAL REVENUE SERVICE, Defendant–Appellant,**

v.

**Earl R. MEYERS and Karin E. Meyers, Plaintiffs–Appellees.**

**No. CV F 80–165–EDP.**

United States District Court, E. D. California.

Oct. 20, 1980.

Herman Sillas, U. S. Atty. by Mio D. Quatraro, Asst. U. S. Atty., Fresno, Cal., and Robert L. Baker, Atty., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

Frank H. Lang, Fresno, Cal., for defendant.

MEMORANDUM DECISION

PRICE, District Judge.

At the time of filing their petition in bankruptcy on February 15, 1979, Earl R. Meyers and Karin E. Meyers (hereinafter referred to as Petitioners) were substantially indebted to the United States for past due and unpaid taxes of various types.

Claims were filed covering this tax liability both by the United States and petitioners pursuant to Rule 303 of the then applicable Bankruptcy Rules.

In issue here are two different tax claims:

The claim of the United States for income taxes due for the calendar year 1977, including penalties, in the amount of $7,287.36. These taxes, the parties concede, would have been entitled to priority over general unsecured creditors in the bankruptcy proceedings. For reasons that do not appear too clear from the record on appeal, Petitioners paid these taxes with property that would have otherwise been exempt from the jurisdiction and control of the bankruptcy court and its trustee.

In addition, Petitioners owe the United States F.I.C.A. and F.U.T.A. taxes totaling, with accrued interest, $3,653.88. These taxes the parties concede have not been paid, and that further, they too are entitled to priority over the general unsecured creditors.

On December 7, 1979, the bankruptcy court made and entered its order in this matter, in pertinent part, as follows:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT said bankrupts be, and they hereby are, subrogated with the priority claim of the UNITED STATES OF AMERICA and the INTERNAL REVENUE SERVICE OF THE UNITED STATES OF AMERICA for and on account of the claim filed by said respondent for income tax for the period ending December 31, 1977 in the amount of $7,287.36, and for the amount of $7,244.00 for income tax for the tax period ending December 31, 1978.

"IT IS FURTHER ORDERED THAT said bankrupts be paid any dividend due said INTERNAL REVENUE SERVICE for said two periods for and on account of such income taxes owed for said period and that the Trustee in bankruptcy in the above–entitled proceedings pay, turn over and deliver to said two bankrupts the dividends entitled to the said INTERNAL REVENUE SERVICE for income taxes for the tax period ending December 31, 1977 in an amount not to exceed $7,287.32, and to pay said bankrupts any taxes due the INTERNAL REVENUE SERVICE for the tax period ending December 31, 1978 for income taxes for the said period in an amount not to exceed $7,244.00; that such payments be made with the same priority to which the INTERNAL REVENUE SERVICE was entitled for such payments."

Petitioners founded their right and title to this order under the general equitable rules of subrogation.[1]

The United States now appeals from that order, contending that the order subrogating the bankrupts to the United States' priority tax claim was in error. By way of explanation, the sum involved was the Petitioner's payment for income taxes for the calendar year 1977 which the petitioners paid with exempt property.

The government argued successively:

(1) Subrogation is not allowed until the creditor to whose claim the subrogee seeks to be subrogated is paid in full.

(2) Debtors, as the primary obligors on the 1977 taxes, cannot be subrogated to the United States claim for those taxes.

(3) Denial of subrogation to the United States government's priority tax claim is consistent with the new bankruptcy code which went into effect October 1, 1979.

Petitioner's reply to the government rests on the following statutes:

(1) Section 57(n) of the Bankruptcy Act of 1938;

(2) Rule 302(e), former Rules of Bankruptcy Procedure;

(3) Rule 303, Rules of Bankruptcy Procedure.

## DISCUSSION

"The right of subrogation is a creature of equity, applicable where one person is required to pay a debt for which another is primarily responsible, and which the latter should in equity discharge. In theory one person is substituted to the claim of another, but only when the equities as between the parties preponderate in favor of the plaintiff." *American Surety Co. v. Bank of California*, 133 F.2d 160, 162 (9th Cir. 1943).

The principles embodied in the equitable doctrine of subrogation well illustrates the dilemma which the court faces in considering this opinion. Simply stated, that dilemma is as follows:

The government could have, employing the various remedies available to it to collect taxes due to the United States, satisfied its claim for the 1977 taxes without any voluntary payment or other cooperation on the part of the Petitioners. The property used ·by the Petitioners to pay these taxes, though exempt pursuant to the bankruptcy laws from the claims of general

1. The extent to which Petitioners rely on the "equitable conscience" of the court is demon-

strated by the fact that Petitioners did not cite a single case authority in their brief on appeal.

creditors, was not so exempt from execution or levy for satisfaction of taxes.[2]

Petitioners, on the other hand, argue that by their payment of these taxes with exempt property, the general creditors in bankruptcy will realize a windfall that they would not have realized but for the petitioner's voluntary payment of these taxes out of exempt funds.

Both statements are manifestly true, at least in substantial part.

The government cites as statutory authority for its position 31 U.S.C. § 191 and 31 U.S.C. § 193. It further cites as case authority two cases which construed the latter section, namely, *United States v. National Surety Co.*, 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143 (1920), and *In re William J. Newman Co.*, 101 F.2d 660, 661 (7th Cir. 1938). Both of these cases dealt with the relationship between the government and the surety company wherein the surety company had discharged its obligation upon the part of its principal debtor. In each instance, the surety was seeking to be subrogated to a priority position of the government which, in effect, would enable the surety to share *equally* in the limited assets available to pay other obligations owed to the government. In each instance the court provided that 31 U.S.C. § 191, as it then read, precluded such a result. In addition to such authority, it should be noted that 31 U.S.C. § 191, effective October 1, 1979, provides that "priority established under this section does not apply, however, in a case under Title 11 of the United States Code." [3]

The case of *A. Gusmer, Inc. v. McGrath*, 196 F.2d 860 (D.C. Cir. 1952), in the court's opinion, states the real basis why the bankruptcy judge erred in this case.

That case presents the following facts: In 1933 the plaintiff entered into an arrangement with an alien German corporation for the right to use a secret process and trademark. For this right, plaintiff paid $3,000 outright to the German corporation, and further agreed to pay sales license fees calculated on gross sales. From 1933 to 1941 it paid sales license fees, but failed to withhold any part thereof for income tax purposes as required by the applicable statutes of the United States. Remittances to the alien corporation were discontinued in 1941 pursuant to the outbreak of hostilities in World War II with the German nation. These unremitted fees accrued to the alien's credit in the hands of the plaintiff. In May of 1946, the Alien Property Custodian was vested with the German corporation's interest, and the accrued fees owed to the German corporation were paid over by the plaintiff to the Alien Property Custodian. At the time of the delivery of these funds plaintiff withheld and shortly thereafter paid to the United States all income taxes due on these accrued fees, i. e., the amounts accrued between December, 1941 and May, 1946.

Thereafter, in 1947, the commissioner of Internal Revenue determined that the plaintiff owed a substantial deficiency for income taxes for the years 1933 to 1941 on the fees it had remitted to the alien corporation during that period and which plaintiff had neglected to withhold or pay any income taxes thereon. The plaintiff paid these deficiencies claimed due by the Commissioner of Internal Revenue, and then filed its claim for the amounts so paid against the assets of the German corporation in the hands of the Alien Property Custodian. Upon having its claim rejected, plaintiff instituted an action in District Court.

Plaintiff contended that upon payment of the amount due the Commissioner of Internal Revenue, it became subrogated to the rights of the government as against the alien taxpayer on whose behalf the taxes were paid. The appellate court rejected this contention and affirmed the judgment

**2.** There was suggestion by counsel for the government during oral argument that they were using this case as a vehicle to obtain a judicial determination that the principles of subrogation are *never* applicable to the law. For reasons stated in the body of this decision, we do not reach that position.

**3.** Title 11, of course, contains the Bankruptcy Code.

of the district court dismissing the action, stating:

"We do not reach the question whether the control which has been exercised by Congress over properties of enemy aliens, including the War Claims Act of 1948, infra, precludes subrogation, because in any event the right to subrogation is unavailable to the plaintiff in the circumstances of this case. Subrogation is governed by equitable principles as applied to the facts of each case. *Gray v. Jacobsen,* 1926, 56 App.D.C. 353, 13 F.2d 959, 48 A.L.R. 583. See *American Surety Co. v. Bethlehem Nat. Bank,* 1941, 314 U.S. 314, at page 317, 62 S.Ct. 226 [228], 86 L.Ed. 241. While the plaintiff paid taxes for which the alien as well as itself was liable, and while prior to the vesting the assets which plaintiff seeks to reach were owned by the alien, nevertheless it was plaintiff's own omission of a statutory duty to withhold the taxes from the funds in its hands which created the problem.... To require that they bear also those due for the years 1933–1941 would result in their depletion because of plaintiff's omission." *Supra* at 862.

There, as here, petitioners' dilemma of which they now complain is solely due to their own omission. While it is clearly true that because of peculiar facts in this case, the general creditors will receive a windfall,[4] such arises only because of the mismanagement of petitioners' own affairs. To state it slightly differently, plaintiffs' hands are not sufficiently clean to entitle them to relief in equity.

Accordingly, the order subrogating bankrupt's priority claim of the Internal Revenue Service is reversed, and the Bankruptcy Court is ordered to make distribution of the estate in accordance with this decision.

---

4. It should be noted that the Court of Appeals in *A. Gusmer, Inc., supra,* also was faced with a "windfall" argument advanced by plaintiff. They disposed of it with the following language:

"Allowance of plaintiff's claim would diminish *pro tanto* the properties available for

those purposes. In all these circumstances the dominant equities preclude a right of subrogation against these funds, even if the statute itself does not, as a substitute for plaintiff's failure to perform a statutory duty which if performed would have obviated its present claim." *Supra* at 862–863.