**L. D. CAULK CO.**

v.

**UNITED STATES.**

**Civ. A. No. 1393.**

United States District Court
District of Delaware.

Nov. 19, 1953.

Charles H. Richards and Caleb S. Layton, of Richards, Layton & Finger, Wilmington, Del., David P. Brown, Jr., C. Clark Hodgson and Andrew B. Young, of Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., H. Brian Holland, Andrew D. Sharpe, Allen A. Bowden, Special Assts. to the Atty. Gen., for defendant.

LEAHY, Chief Judge.

This is a suit for refund of penalties and interest assessed and collected on the premise plaintiff's 1941 and 1942 federal withholding tax returns of royalties

payable to two non-resident aliens were each filed more than five months late.

Plaintiff, a Delaware corporation, held licenses under patents owned by Robert Doge and Emmanuel de Trey. Both patentees were Swiss. Under two licensing agreements, plaintiff obligated itself to pay royalties semi-annually, fifteen days after the close of each six month period. §§ 143(b) and (c) of the Internal Revenue Code, 26 U.S.C.,[1] admittedly required plaintiff to file withholding tax returns of royalties due the non-resident aliens. Critical issue, here, is when the returns were due for royalties attributable to sales made by plaintiff during the year 1941, and the last six months of 1942.

In its treatment of the impact of royalties on its operations, plaintiff, adhering to the accrual method of accounting, entered net royalties and withheld taxes as accrued liabilities of 1941 and 1942. Thus, 1941 and 1942 royalties and taxes were set up as accounts payable on plaintiff's books and as part of its cost of doing business for those years. The entries were actually journalized as of 1941 and 1942. As soon as sales were determined—necessarily sometime after the close of the period—royalties were computed as liabilities as of the prior closing date of the period. Sales during the first half of each year were determined early in the second half, but liability entries for the royalties were made as of the preceding June 30th. Similarly, sales during the second half of the year were determined in the following calendar year, but the liability entries were posted as of the preceding December 31st.

Prior to 1941, the withholding returns for Doge and de Trey were prepared by Bullock, a New York Certified Public Accountant, who was agent of both aliens to prepare their personal income tax returns. Plaintiff's Comptroller testified the corporation relied on Bullock to prepare the returns which were usually forwarded to plaintiff and filed by it. No returns were prepared by Bullock for 1941 or 1942.

Prior to 1941, de Trey had an account with Irving Trust Company in New York to which plaintiff had deposited royalties due him. On June 14, 1941, the account fell under the blocking edict of Executive Order 8785,[2] but deposits could continue to be made under General License No. 1.[3]

Alien Doge had no bank account in the United States prior to 1941, and plaintiff's custom was to request the Swiss Bank Corporation of New York to accept and transmit any royalties due. On January 4, 1943, a license was issued by the Federal Reserve Bank of New York permitting the establishment of a blocked account into which deposits could be made for Doge with the Swiss Bank Corporation. This action was apparently taken at the instance of Doge himself, not plaintiff.

The Royalty Adjustment Act[4] became effective October 31, 1942. By its terms, authority was given to governmental officers to regulate royalties payable with respect to products purchased by the U. S. Plaintiff sold products manufactured under both the Doge and de Trey licenses to agencies of the Government.

Tried to the court on a lengthy stipulation and abbreviated testimony, the matter for decision can best be explicated by the following tabulation:

---

1. Both parties agree the 1946 Code Sections and Regulations thereunder are substantially similar to those governing the case at bar.

2. 12 U.S.C.A. § 95a note. C.F.R., 1941 Supp. Title 3, p. 225.

3. C.F.R., 1940 Supp., Title 3, § 131.1.

4. P.L. 768, 77th Cong., 2nd Sess., 35 U. S.C. §§ 89–96.

| Period of sales from which royalties accrued | Date royalties were payable under Licensing Agreement | Amount of royalties due and date of actual payment* | Amount of tax and date of filing return and payment | Due date of the tax argued for plaintiff | Due date of the tax set by Commissioner | Penalties and Interest | |
|---|---|---|---|---|---|---|---|
| | | | | | | Imposed & date paid | Amount Admitted due by Pltf.** |
| | | | **A. ALIEN ROBERT DOGE** | | | | |
| Entire calendar yr. 1941 | Total $5960.56 payable in two installments: a) $3035.39 due July 15, 1941 b) $2925.17 due Jan. 15, 1942 | $5960.56 paid Jan. 29, 1943 | $1447.79 paid May 14, 1943 | March 15, 1944 | March 15, 1942 | $361.95, (a 25% penalty) plus $70.87 (interest on penalty) both paid June 16, 1947 | None |
| July thru Dec. 1942 | Jan. 15, 1943 | $1026.19 paid July 27, 1943 | $383.98 paid July 29, 1943 | March 15, 1944 | March 15, 1943 | $96.00 (a 25% penalty) plus $18.80 (interest on penalty) both paid June 16, 1947 | None |

*In no instance was payment directly made to either alien. All payments were deposited to blocked accounts with the single exception of de Trey's $7826.67 royalties attributable to Government sales during the latter half of 1942. This sum plaintiff forwarded to Bullock, de Trey's New York agent, who deposited the full amount to the blocked account.

**In argument and the briefs, plaintiff's basic position was no penalties nor interest were due because the returns were either timely filed or relief from penalty was appropriate under Sec. 291 due to the existence of "reasonable cause" for any tardy filing and the absence of "willful neglect". Alternatively, plaintiff argues if it was delinquent and is liable for the penalties, then only the amount shown in the referenced column was due, with the balance being refundable.

| Period of sales from which royalties accrued | Date royalties were payable under Licensing Agreement | Amount of royalties due and date of actual payment* | Amount of tax and date of filing return and payment | Due date of the tax argued for plaintiff | Due date of the tax set by Commissioner | Penalties and Interest | |
|---|---|---|---|---|---|---|---|
| | | | | | | Imposed & date paid | Amount Admitted due by Pltf.** |
| | | | B. ALIEN EMMANUEL DE TREY | | | | |
| Jan. thru June 1941 | July 15, 1941 | $6942.44 paid Oct. 22, 1941 | $1396.99 Paid May 14, 1943 | March 15, 1942 | March 15, 1942 (Commissioner considered entire year 1941 as one indivisible taxable yr. and imposed the 25% penalty on taxes for the whole year 1941. No penalty was shown on the $1514.33 additional tax paid to the N. Y. Collector in 1944) | For entire year 1941: $1498.14 (a 25% penalty) and $293.37 (interest on penalty) both paid June 16, 1947 | $349.25 (a 25% penalty on $1396.99) plus interest on penalty |
| July thru Dec. 1941 | Jan. 15, 1942 | $12,517.50 paid March 9, 1942 | $6109.91 ($4595.58 tax was paid to Del. Collector on May 14, 1943, and $1514.33 deficiency tax was paid to N. Y. Collector on Dec. 14, 1944 | March 15, 1943 | | | $459.56 (a 10% penalty on $4595.58) plus interest on penalty |

See footnotes on page 837.

| Period of sales from which royalties accrued | Date royalties were payable under Licensing Agreement | Amount of royalties due and date of actual payment* | Amount of tax and date of filing return and payment | Due date of the tax argued for plaintiff | Due date of the tax set by Commissioner | Penalties and Interest | |
|---|---|---|---|---|---|---|---|
| | | | | | | Imposed & date paid | Amount Admitted due by Pltf.** |
| July thru Dec. 1942 | Jan. 15, 1943 | Total: $15,413.59 a) $7586.92 attributable to civilian sales, paid July 22, 1943. b) $7826.67 attributable to Gov't sales, also paid July 22, 1943, to de Trey's agent, Bullock. | Total: $6396.93 a) $3321.78 re civilian sales, paid July 29, 1943 b) $3075.15 re Gov't sales also paid July 29, 1943 | March 15, 1944 | March 15, 1943 | $1599.23 (a 25% penalty) and $313.16 (int. on penalty) both paid June 16, 1947 | None |

See footnotes on page 887.

**1.** Path of decision begins with statutory steps: § 291, I.R.C.,[5] imposes graduated percentage penalties for failure to file a return "within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect". At this three-way junction, I first follow after the time prescription in the "law", then of the Commissioner, and, if need be, sufficiency of plaintiff's excuses for failure to file on time.

Immediately, I find the "law" has not prescribed time of filing with exactitude, § 143(c) [6] providing only: "Every person required to deduct and withhold any tax under this section shall make return thereof on or before March 15 of each year and shall on or before June 15 * * * pay the tax * * *." Upon analysis, this section is seen as prescribing no return on any March 15th if no withholding was "required" during the preceding taxable year. So the requirement to withhold governs necessity of filing in any given year. Therefore, inquiry shifts from "when was the return due" to "when, if at all, was plaintiff required to withhold the tax from the royalties". There is no question raised by plaintiff as to existence of its duty to withhold on the royalties. The "when" of the matter, not the "who" or the "what" is point of dispute and inquiry.

The onus of the withholding requirement on plaintiff is imposed by § 143(b), I.R.C.[7]: "All persons, in whatever capacity acting, * * * having the control, receipt, custody, disposal, or payment of * * * fixed or determinable annual or periodical gains, profits, and income * * * of any nonresident alien * * * shall deduct and withhold from such annual or periodical gains, profits, and income a tax * * *." On the whole, this provision does not concern itself with "when" the withholding should take place. Rather, it simply specifies "who" shall do "what". However, this much light it does shed. The duty to withhold presupposes the existence of "annual or periodical gains, profits, and income". The section directs the withholding from such sums as are identifiable as "gains, profits, and income" of the nonresident alien. Obviously, if there are no such "gains, profits, and income", the duty to withhold is nonexistent. On the other hand, if there are such sums available, the statutory language is inconclusive in deciding "when" the withholding duty arose.[8]

I do not ground my decision on any subtlety of construction,[9] but I do advert, in fact, to it. Were the royalties "gains, profits, and income" to the aliens Doge and de Trey while plaintiff retained them under these circumstances? I think not upon a realistic view of the matter. The

5. 26 U.S.C., 1946 ed., § 291.

6. 26 U.S.C., 1946 ed., § 143(c).

7. 26 U.S.C., 1946 ed., § 143(b).

8. I think it erroneous and productive only of avoidable confusion to dissect the opening words of the section descriptive of the persons on whom the withholding duty falls and attach to them a binding declaration of Congress as to when that duty matures. This defendant does with some emphasis but without persuasiveness. Defendant's excursion into the realm of semantics is based on a seemingly unwarranted assumption, viz., the duty to withhold arises at precisely the same time for all the various types of persons bound to that duty by § 143(b), I.R.C. Since the instant

case concerns a corporate plaintiff obligated by contract to pay royalties to nonresident aliens to whom direct payment was forbidden by governmental fiat, I need not decide the larger question but confine my concern to one "having the payment" of royalties.

9. Nor do I pause to decide whether the obligation to withhold by the agent is coincident with that of the alien himself to pay the tax. This was likewise left undecided, although alluded to, in Southern Pacific R. R. Co. v. C. I. R., 21 B.T.A. 990. However, the compulsion to consider the existence of "gains, profits, and income" to the alien in defining the withholding agent's duty is some indication of similarity of duties.

blocking proclamation plucked every element of control over the funds from the alien's theoretical bundle of ownership rights. This loss of the essence of private ownership occurred while the royalties were still in plaintiff's possession, since the blocking freeze applied to individual debtors of Swiss nationals. As soon as royalties accrued to the aliens under the contract, this crazy predicament faced them: they had theoretical right to collect the royalties but were forbidden right to receive them or dispose of them. No economic advantage was theirs. Such a hollow "right" does not have the core of benefit sufficient to constitute "gains, profits, and income". Even the ubiquitous doctrine of constructive receipt of income has no tentacle long enough to reach these royalties. Cf. Reg. 103, § 19–42–2. As said with reference to § 22–(b) (2), I.R.C., in Industrial Trust Co. v. Broderick, 1 Cir., 94 F.2d 927, at page 930, "Throughout the Revenue Laws the words gain, profit, or income mean an actual, not a fictitious gain or profit * * *." Certainly, these were not "income" and, if "gains, or profit", were unrealized and highly artificial. Further, the aliens here had no power to command payment to themselves or others, unlike the donor of the interest coupons in Helvering v. Horst, 311 U.S. 112, at page 118, 61 S.Ct. 144, 147, 85 L.Ed. 75, where it is said: "The power to dispose of income is the equivalent of ownership of it." It would seem, then, there being no "gains, profits, or income" of the aliens at least during the time plaintiff retained their blocked roy-

alties, no withholding duty devolved on plaintiff and no penalties are proper.[10]

■ 2. Adopted basis for decision, however, is the legislative history of § 143(b) and hints derived from the published pronouncements of the Bureau and Courts.

Present § 143(b), I.R.C., is traced back to the Act of October 3, 1913.[11] Paragraphs D and E of that Act are pertinent. Paragraph D provided: " * * * all persons * * * having the control, receipt, disposal, or payment of fixed or determinable annual or periodical gains, profits, and income of another person subject to tax, shall in behalf of such person deduct and withhold *from the payment* an amount equivalent to the normal income tax * * *."[12] Paragraph E of the same Act in part specified: "All persons * * * having the control, receipt, custody, disposal, or payment of * * * other fixed or determinable annual gains, profits, and income of another person, exceeding $3,000 for any taxable year * * * who are required to make and render a return in behalf of another, as provided herein, * * * are hereby authorized and required to deduct and withhold from such annual gains, profits, and income such sum as will be sufficient to pay the normal tax * * * and they are each hereby made personally liable for such tax." Paragraph D is explicit in directing withholding from the "payment" while its companion section authorizes the deduction and imposes personal liability on the withholding agent. In its Report to the House of Representatives[13] on the Bill, the

10. If this were the prop to decision, there would be no need for further inquiry into such questions as: when, if ever, and on whom, if anybody, did the duty to withhold ever attach. Extent of plaintiff's duty in the premises, if any, is the sole inquiry. Comment on the other matters would be warranted only to gauge impact of this decision on the scheme of tax collection. However, in reality, plaintiff does not contest existence of its obligation to withhold, but only claims the duty arose upon payment. In any event, it does not seem incongruous the withholding may either occur when the funds pass from the original debtor to an intermediate blocked account or be postponed until the final custodian of the funds passes them on to the alien.

11. 38 Stat. 168, 169, chap. 16, § II.

12. All emphasis has been added in this opinion unless otherwise noted.

13. House Report No. 5, 63rd Cong., 1st Sess., 4/22/13, 1939–1 (Part 2) C.B. 2.

Committee on Ways and Means said, "Probably two-thirds of the income tax proposed as to individuals would be deducted and withheld at the source of the income and paid in full to the Government. * * * By this method the amount of tax due or to become due upon every fixed or determinable annual income is withheld and paid to the Government *before the income reaches the taxpayer*". Nonresident aliens as well as citizens were subject to this withholding system.[14]

In the 1916 Act,[15] quoted paragraph D was repeated as section 8(d) under the significant heading "Returns". Paragraph E, as quoted, was repeated as section 9(b) under the heading "Assessment and Administration".

By the Revenue Act of 1917,[16] paragraph 8(d) of the 1916 Act (par. D of the 1913 Act) was repealed so as to render unnecessary any "withholding at the source of the tax due on profits or incomes of resident taxable persons". Information at the source was substituted. According to the House Report,[17] this change was made for "a more effective administration of the law" and the "saving of annoyance and expense to the taxpayers and withholding agents". By the same Act,[18] paragraph 9(b) of the 1916 Act (par. E of the 1913 Act) was amended to limit withholding at the source to nonresident aliens. The Act further included interest from tax-free covenant bonds as a subject of withholding.

The Revenue Act of 1918 [19] made no change in the pertinent language of the amended § 9(b) but did increase the withholding rate and renumbered the section as 221. However, the Report [20] of the Ways and Means Committee of the House aids search in its comments on "Collection at the Source": "The proposed bill, *as under existing law,* requires only the withholding of income in the case of *payments* by individuals, corporations, and partnerships of fixed and determinable annual or periodical gains, profits, and income to nonresident alien individuals or nonresident corporations". This comment is an indication the intent of Congress was as expressed in paragraph D of the 1913 Act and was continued in § 9(b) of the 1917 Act when the former provision was repealed. No change was intended when the withholding provisions were delimited to apply only to nonresident aliens. The time of payment was the time when the withholding duty arose.

The Revenue Act of 1921 [21] made no amendments to the Section pertinent to inquiry, nor did the Act of 1924. However, both the House Report [22] and the Senate Report [23] on the 1924 Act have this comment: "Section 221: Subdivision (a) of this section of the present law provides for the withholding of a tax, equal to the normal tax, on fixed or determinable income *paid* to a nonresident alien individual, or a partnership composed in whole or in part of nonresident aliens." Both also refer to "requiring the withholding of tax from *payments*" to a partnership.

Rates of withholding were increased by the Revenue Act of 1926,[24] and the

14. See Amend. 100, 101, H.R.Rept.No. 1200, 64th Cong., 1st Sess., 1939—1, (Part 2), C.B. 37.

15. 39 Stat. 761, 763; chap. 463, §§ 8, 9.

16. 40 Stat. 301, 332, c. 63, § 1204(2), Oct. 3, 1917.

17. H.R.No.45, 65th Cong., 1st Sess., 1939—1 (Part 2), C.B. 67.

18. 40 Stat. 301, 332, c. 63, § 1205(1).

19. 40 Stat. 1072, c. 18, § 221, Feb. 24, 1919.

20. H.R.No.767, 65th Cong., 2nd Sess., 1939—1 (Part 2), C.B. 96, 97.

21. 42 Stat. 248, c. 136, § 221, Nov. 23, 1921.

22. H.R.Rep.No.179, 68th Cong., 1st Sess., 1939—1 (Part 2), C.B. 257.

23. Sen. Report No. 398, 68th Cong., 1st Sess., 1939—1 (Part 2), C.B. 284.

24. 44 Stat. 35, c. 27, § 221(a), Feb. 26, 1926.

Conference Report [25] of the Committees of the House and Senate refers to the effect of the hike in rates: "This amendment requires the withholding of a tax of 12½ per cent in respect of all *payments* of income made before the enactment of this Act and 13½ per cent in respect of such *payments* made after the enactment of this Act to foreign corporations specified below. * * * Because the persons making *payments* * * * had no notice that the corporation income tax would be increased, the withholding rate is not increased with respect to *payments* made before the enactment of this Act; * * *". Although reference is to foreign corporations, the withholding on payments to them is but a part of the same system embracing individuals.

In the Revenue Act of 1928 [26] a wholesale departure was made from the arrangement of prior Acts. § 221 became § 144. In commenting on part (a) of the Section, both the House Report [27] and the Senate Report [28] stated: "The present law provides for the withholding at the source, in the case of bonds, of a tax of 5 per cent of the interest *when paid* to nonresident aliens. * * *."

Under the Revenue Act of 1932,[29] the section was renumbered 143 and the rates were increased without affecting the aspect of the provision under consideration.

The Revenue Act of 1934 [30] made no changes bearing upon our inquiry, but again in the House Report [31] and in the Senate Report [32] references to withholding of tax on interest obligations were couched in terms of payment.

The 1936 Act [33] did not change the terms of § 143 as they affect the problem under investigation. However, a comment in the Senate Report [34] confirms the prior statements: "Section 32 of the existing law provides that the tax withheld at the source under section 143 *from payments* to an individual taxpayer shall be a credit against such taxpayer's tax". Reference is also made to "withholding in the case of *payments* to foreign corporations".

The House Report,[35] which the Senate adopted, on the Revenue Act of 1937 [36] is equivocal in stating with reference to a change in § 211(a): "There will be withheld from the amounts *receivable* by a nonresident alien taxed under the new provisions the amounts required to be withheld under section 143 of the present law". "Receivable", of course, is descriptive of minute divisions of time from the first moment of accrual to the last second before receipt of payment.

The House Report on the Revenue Act of 1938 [37] appears to reaffirm the earlier interpretations even if the 1937 Report be viewed as a deviation. In referring to consent dividends, the Committee on Ways and Means reported:[38] "In case any shareholder making a consent is a person subject to the provisions of section 143(b) and section 144, relating to

25. H.R.Rep.No.356, 69th Cong., 1st Sess., 1939—1 (Part 2), C.B. 367.

26. 45 Stat. 833, c. 852, § 144.

27. H.R.No.2, 70th Cong., 1st Sess., 1939—1 (Part 2), C.B. 398.

28. Senate Rept. No. 960, 70th Cong., 1st Sess., 1939—1, (Part 2), C.B. 429.

29. 47 Stat. 215, c. 209, § 143, June 6, 1932.

30. 48 Stat. 723, c. 277, § 143, May 10, 1934.

31. H.R.Rept. 704, 73rd Cong., 2nd Sess., 1939—1 (Part 2), C.B. 578.

32. Senate Report 558, 73rd Cong., 2nd Sess., 1939—1, (Part 2), C.B. 616.

33. 49 Stat. 1700, c. 690, § 143, June 22, 1936.

34. Senate Rept. No. 2156, 74th Cong., 2nd Sess., 1939—1 (Part 2), C.B. 678.

35. H.R.No.1546, 75th Cong., 1st Sess., 1939—1 (Part 2), C.B. 726.

36. 50 Stat. 813, Part 1, c. 815.

37. 52 Stat. 447, c. 289, § 143, May 28, 1938.

38. H.R.No.1860, 75th Cong., 3rd Sess., 1939—1 (Part 2), C.B. 747.

the deduction and withholding of tax at the source, section 28(d) 5 requires that such consent filed by the corporation with its return shall be accompanied by cash * * * equal to the amount which the corporation would have been required to deduct and withhold by such section 143(b) or 144 if the amount specified in such consent had been *paid* to such shareholder, on the last day of the taxable year of the corporation, in cash as a taxable dividend." The Senate Report [39] used same language in referring to § 143(b).

No pertinent comment was found in the Committee Reports on the other Revenue Acts down to 1941 and 1942, the tax years in question. However, one further reference is made to a later committee report reflecting current thinking. The House Report [40] on the Revenue Act of 1950 [41] in referring to a proposed § 1311(a) states: "This subsection also provides that any person required to deduct and withhold a tax under section 143 or 144 * * * on the *payment* of a dividend shall not be required to deduct and withhold a tax under this section upon such payment".

Regulations promulgated by the Commissioner contain abundant references to payment as indicating the crystallization of the withholding duty. Treasury Regulations 111,[42] § 29.143–1(a) states: "Withholding of a tax of 30 percent * * * is required in the case of fixed or determinable annual or periodical income *paid* to a nonresident alien individual * * *". The subsections of § 29.143 are replete with references to withholding upon payment, such as "The tax must be withheld at the source from

the gross amount of any *distribution* made by a corporation" (29.143–1); "* * * an annual return * * * showing the amount of tax required to be withheld from each nonresident alien * * * to which income other than interest *was paid* during the previous taxable year" (29.143–7); "Tax withheld at the source upon * * * income *paid* to nonresident alien fiduciaries * * *" (29.143–9).

On the issue of whether withholding should be at the rate in effect at the time payments were due or at the rate when payments were actually made, the Bureau has ruled the time of payment governs the rate. O.D. 167, 1 C.B. 192; I.T. 1521, I–2 C.B. 197; I.T. 3020, XV–2, C.B. 106; I.T. 3291, 1939–1, C.B. 140. Cf. I.T. 3535, 1942–1, C.B. 129; I.T. 3342, 1940–1, C.B. 58. In fact, language sufficiently broad to encompass the problem was employed in G.C.M. 2467, 7–2 C.B. 188 (modified on other grounds in G.C.M. 8594, 9–1 C.B. 354): "* * * withholding is only required when * * * income is *paid* to a nonresident alien and at the rate in force at the time of payment."

As in the above, so Southern Pacific Railroad Co. v. C. I. R., 21 B.T.A. 990, held rate of withholding was that which was effective on the date of actual payment. In that case, the petitioning company contended unsuccessfully for a result similar to the one here sought by the Government. Bond interest due and payable during 1914–1917 could not then be paid to nonresident aliens because of war restrictions. It was, in fact, paid in 1921 and 1923, after the withholding

39. Senate Rept. No. 1567, 75th Cong., 3rd Sess., 1939—1, (Part 2), C.B. 799.

40. H.R.Rept.No.2319, 81st Cong., 2nd Sess., C.B. 478, 1950—2.

41. 64 Stat. 906. For taxable years beginning after January 1, 1951, royalties of a Swiss national are tax exempt un-

der a reciprocal tax convention with Switzerland. 26 C.F.R., 1952 Supp. 7.303.

42. Both parties agree pertinent parts of Reg. 111 are substantially similar to those of Reg. 103 which were applicable to the years in question.

rates had been increased. The company argued the former, lower rates should apply because the interest was then due; sufficient funds were available at all times for its payment; and the date of constructive receipt by the bondholders gave rise to the duty of withholding. The Board of Tax Appeals rejected these arguments, saying, 21 B.T.A. at pages 995 and 996: "The petitioners did not and were not called upon to pay the interest until 1923, and the nonresident aliens did not and for all that appears could not receive the interest until then * * *. When the interest was actually paid to and received by the bondholders they received income taxable at the rate then effective, and the petitioners were under the duty of paying so much thereof as by the statute then in effect they were required to withhold and pay." Oblique support is thus given to adoption of the time of payment as the maturation point of the withholding duty, payment being both an easily recognizable act of objective significance and a standard safeguarding the collection of the proper amount of tax.

I recognize the issue in the case at bar was not expressly decided in our Court of Appeals decision in McGrath v. Dravo Corporation, 3 Cir., 183 F.2d 709, but, by implication, there is consistency with raising the withholding duty at the time of payment. In referring to a remittance of royalties to the nonresident aliens, the Court of Appeals, 183 F.2d at page 710 said: "Dravo failed to deduct income taxes from that sum (i. e., the remittance) as it was required to do by Sections 143(b) and (c) of the Internal Revenue Code * * *." It also appears from the facts Dravo Corp. was not required to withhold any tax from the royalties which were not paid to the aliens. The full amount of those royalties, minus the tax paid on the remitted royalties, was paid to the Alien Property Custodian. On a similar issue, the Court in Synthetic Patents Co. v. Sutherland, 2 Cir., 22 F.2d 491, 492, said: "Under the internal revenue laws (39 Stat. 756) it was the duty of the appellee to withhold the amount of the income taxes due on each of said remittances before making the payment * * *."

Here the Government noted it was "aware of the authority the taxpayer has cited supporting the point that payment date is the only significant one". Without distinguishing or discussing plaintiff's authority, Government chooses to bottom its case on Mim. 5075, 1940–2 C.B. 141–142, and a letter from the Deputy Commissioner to the Committee of Banking Institutions on Taxation dated January 20, 1942. Mim. 5075 does not mention Swiss nationals since Switzerland was not a blocked country at the time of its issuance, July 8, 1940. Aside from this, the Mimeograph merely provides "The tax should be withheld in such cases in the same manner and to the same extent as if the restriction on the transfer of the income did not exist." Applying this direction, plaintiff would not have been bound to withhold the tax before its payments of the royalties. The usual pre-blocking procedure was for plaintiff to deduct the tax from its payments of the royalties upon transmission to the forwarding banks. If plaintiff had considered the restriction on the transfer of aliens' funds as nonexistent, as Mim. 5075 directed, the tax would have been withheld upon payment to the same New York banks as was customary and without any apparent objection from the Bureau. The Deputy Commissioner's letter of January 20, 1942, by its terms applied the provisions of Mim. 5075 to dividends. Its prime message was to stress liability of withholding agents for the "rate in effect on the date the dividends are payable or credited to the accounts of the foreign persons". Here, there can be no quarrel about rate of withholding.

Convinced the withholding returns were due to be filed on the March 15th following the years in which payments

were made—the acts which irrevocably severed plaintiff's control over the funds —I tabulate the effects of this decision on the master facts:—

| Amount & Date of Payment | Return Due | Return Filed | Months Delinquent |
|---|---|---|---|
| A. Re Doge | | | |
| $5960.56 paid Jan. 29, 1943 | March 15, 1944 | May 14, 1943 | None |
| $1026.19 paid July 27, 1943 | March 15, 1944 | July 29, 1943 | None |
| B. Re de Trey | | | |
| $6942.44 paid Oct. 22, 1941 | March 15, 1942 | May 14, 1943 | 14 |
| $12,517.50 paid March 9, 1942 | March 15, 1943 | May 14, 1943 | 2 |
| $15,413.59 paid July 22, 1943 | March 15, 1944 | July 29, 1943 | None |

■ Two returns were belatedly filed. As to these, plaintiff claims immunity from the penalties because of I.R.C. § 291's relief when the failure to file "is due to reasonable cause and not due to willful neglect". In this, too, I agree with plaintiff, at the same time noting resort to this further argument would be unnecessary on the alternative ground of decision. If there were no gains, profits, or income to the aliens, no withholding return was ever due from plaintiff, and I would never reach the question of tardy filing, much less sufficiency of an excuse for it. Nevertheless, there are adequate facts of record for excusing plaintiff independently of that approach.

Uncontroverted evidence shows for many years prior to 1941 Walter Bullock, a New York Certified Public Accountant, since deceased, was both U. S. tax agent of the two aliens and the professional advisor and preparing accountant of plaintiff. Bullock had long prepared the Nonresident Income Tax Form 1040N and the Withholding Form 1042, with diligence and competence. I find plaintiff was justified in depending on this person whose professional status is at least persuasive of the peculiar expertise required in this field. Walnut St. Co. v. Glenn, D.C., 83 F.Supp. 945. Plaintiff relied on his judgment no withholding return was due so long as the funds remained blocked, and Bullock did not prepare the returns for 1941 and 1942. Some time in May 1943, the Collector notified plaintiff the 1941 return had not been filed, whereupon it was immediately filed and the tax paid. The Court of Appeals of this Circuit has ruled that "* * * (1) 'Reasonable cause means nothing more than the exercise of ordinary business care and prudence.' and (2) the penalties imposed under the revenue laws were designed to attach to conduct of a taxpayer 'which is intentional, or knowing, or voluntary, as distinguished from accidental' (here quoting from U. S. v. Murdock, 290 U. S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381) as evidenced by the words in Section 291 'and not due to willful neglect.'" Hatfried, Inc., v. Commissioner of Internal Revenue, 3 Cir., 162 F.2d 628, 632. There, too, reliance on the advice of a licensed accountant excused the taxpayer from penalties when full disclosure of all the facts was made and the law itself was ambiguous. See also Haywood Lumber & Mining Co. v. C. I. R., 2 Cir., 178 F.2d 769.

At the argument and on the briefs, both parties specify the amount in issue as $4251.52, the total sum of all the penalties and the interest on those penalties. A judgment of $4251.52 plus statutory interest from June 16, 1947, will be entered for plaintiff upon notice.

An order in accordance with this opinion may be submitted upon notice.