423 F.2d 49
 NEWMAN & COMPANY, Société Financiere de Transports et d'Entreprises Industrielles (Sofina), S.A., Société pour la Finance et I'Electricité, S.A., Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 4.
 No. 5.
 No. 6.
 Docket 33020.
 Docket 33021.
 Docket 33022.
 United States Court of Appeals, Second Circuit.
 Argued October 3, 1969.
 Decided March 4, 1970.
 
 Howard H. Bachrach, New York City (Hooker, Alley & Duncan, New York City, James B. Alley, New York City, on the brief), for plaintiffs-appellants.
 Richard M. Hall, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, on the brief), for defendant-appellee.
 Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge.
 
 
 1
 This is an appeal by Newman & Company, a domestic partnership, nominal shareholder in three domestic corporations (Amitas, Sulectra and BSC) as nominee of three nonresident foreign corporations (Sofina, Solec and Services) from summary judgment in the United States District Court for the Southern District of New York, Charles H. Tenney, Judge, 290 F.Supp. 170 (S.D.N.Y. 1968), upholding a deficiency assessment for federal income tax with respect to dividends distributed to Sofina, Solec and Services in the years 1954 through 1958. We find error and reverse and remand with instructions.
 
 
 2
 There is no dispute on the facts. The domestic corporations distributed to their shareholders as dividends in the years in question appreciated shares held in unrelated corporations. Newman withheld tax at the appropriate rates applied to the adjusted basis in the hands of the distributing domestic corporations. The Commissioner assessed a deficiency based on those rates applied to the market value of the shares distributed as dividends. Newman paid and sued in the district court for refund. Both parties moved for summary judgment, which was granted to the United States. The statutes involved are the sections of the Internal Revenue Code of 1954, in effect during the years in question, set out in the margin.[1]
 
 
 3
 Section 881 imposes a tax of 30% on "the amount received" by foreign corporations not engaged in business in the United States. This tax is a "flat" rate on amounts received as distinguished from the tax on corporations doing business in the United States which has different rates for various kinds of income (e. g., ordinary income, capital gains, etc.) and which permits deductions from gross income before application of the tax rate.
 
 
 4
 In order to insure the collection of taxes on income of foreign corporations not engaged in business in the United States, Congress provided for the withholding of taxes at the source of the income before the amounts were distributed out of the country. Section 1442 through reference to section 1441 requires the withholding of taxes at the rate of 30% on "income items" including "dividends" in the case of foreign corporations not engaged in business in the United States.
 
 
 5
 The instant dispute arises over the manner of computing in the case of dividends of appreciated stock "the amount received" under section 881 and the amount of "dividends" in section 1441(b) to which the 30% tax and withholding are to be applied. Appellants contend that section 301(b) (1) (B) defines that amount for corporate distributes as being the lesser of the fair market value of the stock and its adjusted basis in the hands of the distributing corporation.[2] The government, on the other hand, argues that section 301(b) (1) (B) was intended only to defer taxes on the appreciation in the property distributed as a dividend and therefore it was not intended to apply in the case of foreign corporations not engaged in United States business, since the amount appreciated would not be taxed as gain when such corporation sold the appreciated property.
 
 
 6
 The government argues first that section 881 defines a separate tax on all amounts received by foreign corporations and that this tax is not subject to definitions in the Code applicable to domestic corporations. Thus it contends that "amounts received" under section 881 should mean the fair market value of any property received, and that there is no need to look elsewhere in the Code for the definition of "amounts received." This contention, however, cannot be sustained. It is true that section 881 does not permit deductions as in the case of corporations doing business in the United States. But although foreign corporations must pay tax under section 881 on interest, for example, they do not have to pay tax on interest on municipal bonds, since this is excluded from gross income by section 103. See also section 116(d). Thus the "amounts received" which are taxed under section 881 are subject to sections of the Code which provide for exclusions from gross income. Treasury Regulation Section 1.881-2(a) specifically so provides saying "* * * for purposes of section 881(a), `amount received' means `gross income.'" Therefore, section 881 must refer to other sections of the Code in which the amounts which constitute "gross income" and hence "amounts received" are defined. Section 301(b) (1) (B) defines for corporate distributees the amount to be included in gross income in the event of dividends of appreciated stock.
 
 
 7
 The government argues next that section 301 does not apply in the case of foreign corporations not engaged in business here, on the ground that section 1442 which mandates the withholding of tax for such foreign corporations provides for withholding "in the same manner and on the same items of income as is provided in section 1441" (which deals with foreign individuals and partnerships). The government reads this reference to section 1441 as a demonstration that Congress intended to treat foreign corporations and individuals alike in contrast to section 301 which differentiates between corporate and individual distributees. Section 1442, however, is only a tax collection provision, and its reference to section 1441 simply serves to avoid repetition of identical income items, and not to determine how those items were to be calculated. Moreover, reference to the legislative history of sections 1441 and 1442 in 1936 does not bear on Congressional intent as to the application here of section 301 which, after all, was not enacted until the 1954 revision of the Code.
 
 
 8
 The government therefore argues that despite the unqualified use of the words "corporate distributees" in section 301(b),[3] Congress did not intend for the section to apply to foreign corporations not doing business here. Section 301(b) provides in the case of dividends of property paid to corporations that the amount to be included in gross income is to be the lesser of the property's fair market value and its basis in the hands of the distributing corporation. Section 301(d) (2) provides that the distributee's basis also shall be the lesser of the two amounts. Thus Congress intended, in the event of dividends to corporations of appreciated property, to prevent corporate distributees from getting a step-up on the basis of the property at the small expense of paying the relatively low intercorporate dividend tax rate (which is in effect approximately 7.2%) on the amount of the property's appreciation. See H.R.Rep. No. 1337, 83d Cong., 2d Sess. 34, 35 (1954), U.S. Code Cong. & Admin. News 1954, p. 4025 (dealing with the bill introducing § 301(b) (1) (B)); cf. H.R. Rep.No. 1447, 87th Cong., 2d Sess. 26 (1962). The effect of the provision for domestic corporations is to defer tax on the amount of appreciation until the distributee corporation sells the property, at which time the appreciation in the property's value will be subject to the higher corporate tax on capital gains or ordinary income.
 
 
 9
 The government contends that since gains realized on sale by foreign corporations not doing business here are not subject to tax, Congress could not have intended to apply section 301(b) (1) (B) to such corporations, and that preventing a step-up in basis and deferring tax collection in such cases would serve no purpose. Fear of this kind of revenue loss arising from the "escape" of the amount of appreciation from any taxation in this situation, probably motivated the Internal Revenue Service in Rev. Rul. 57-470, 1957-2 C.B. 608, when it held without supporting rationale that "section 301(b) (1) (B) is not applicable to nonresident foreign corporations."
 
 
 10
 The problem of revenue loss from applying section 301(b) (1) (B) to foreign corporations not engaged in business in the United States has been noted before. The Subcommittee on Internal Revenue Taxation of the House Ways and Means Committee in 1956 appointed an Advisory Group to assist in the study of subchapter C of the 1954 Code. See Hearings before the House Committee on Ways and Means, 85th Cong., 2d Sess., part 3 at 2463, 2498-99 (1958). In December, 1957, after Revenue Ruling 57-470, the Advisory Group recommended legislation to close the apparent loophole, but its recommendation in this respect was not followed.[4] From this appellants argue that Congress knew of the possible revenue loss but felt that a change would be unwise, perhaps because of its adverse effect on foreign investment. The government, of course, argues that the failure to make the change indicates that Congress probably did not feel that any loophole existed. We are unable to find any conclusive evidence of Congressional intent from the failure to act, and we see in the incident only recognition by a knowledgeable group of tax experts that the statute does indeed purport to apply the standards of section 301(b) (1) (B) to corporations foreign as well as domestic. With this we are constrained to agree.
 
 
 11
 Since the words of section 301(b) (1) (B) clearly purport to apply unqualifiedly to all corporations, it would indeed be hazardous for this court to create exceptions designed to close apparent loopholes in accord with the deemed Congressional policy to disallow revenue leakages of the kind involved here. See Hanover Bank v. Commissioner of Internal Revenue, 369 U.S. 672, 687, 82 S.Ct. 1080, 8 L.Ed. 2d 187 (1962); cf. Graham v. Commissioner of Internal Revenue, 304 F.2d 707, 710 (2d Cir. 1962). The dangers of such judicially created exceptions can be demonstrated in the context of the instant case in deciding what types of foreign corporations should be excluded from the application of section 301(b) (1) (B). If we hold that all foreign corporations, including those doing business in the United States, do not come under the rule of section 301(b) (1) (B), then we succeed in sealing the present leakage by puncturing a new hole in the national revenues. Under such an exception, resident foreign corporations could step-up the basis on received dividends of appreciated property, paying only the low intercorporate tax on the appreciated amount, and then use the stepped-up basis against the higher capital gains tax on resale, or against the yet higher tax on ordinary income in the form of deduction for depreciation if the property were depreciable. It was just such a step-up in basis which the Congress sought to avoid in enacting section 301 (b) (1) (B). If, on the other hand, we hold that only foreign corporations not engaged in business in the United States do not come within the scope of section 301(b) (1) (B), then we have not closed off the very leakage to which the government points. Under this latter rule, a resident foreign corporation (subject to section 301(b)(1) (B)) would pay tax on a dividend of appreciated securities only on the amount of the basis in the hands of the distributing corporation, and could then sell the securities abroad and never have to pay tax on the appreciation prior to or after the distribution. This demonstrates simply that whatever the scope of a judicially created exception to section 301(b) (1) (B), the dike will still be in need of Congressional repair. See Fabreeka Products Co. v. Commissioner of Internal Revenue, 294 F.2d 876, 879 (1 Cir. 1961).
 
 
 12
 Thus the problem of stopping the revenue drain involved in the unqualified application of section 301(b) (1) (B) to nonresident foreign corporations requires Congressional rather than judicial action. The fact that nonresident foreign corporations must pay a flat 30% tax under section 881 on most corporate dividends, while domestic corporations effectively pay only 7.2% on intercorporate dividends, diminishes the alleged inequity of not taxing foreign corporations on the appreciated value of the corporate dividends.
 
 
 13
 In light of the clear words of section 301(b) (1) (B) and the hazards of fashioning a judicial remedy for the alleged loophole, we must conclude that the section applies to foreign corporations not engaged in business in the United States. Therefore, summary judgment was erroneously granted for the government, and should now be entered for appellants.
 
 
 14
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 Section 881
 (a) Imposition of Tax. — In the case of every foreign corporation not engaged in trade or business within the United States, there is hereby imposed for each taxable year, in lieu of the taxes imposed by section 11, a tax of 30 percent of the amount received from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income (including amounts described in section 631(b) and (c) which are considered to be gains from the sale or exchange of capital assets). [26 U.S.C.1958 ed., § 881]
 Section 1441
 (a) General Rule. — Except as otherwise provided in subsection (c), all persons, in whatever capacity acting (including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of the United States) having the control, receipt, custody, disposal, or payment of any of the items of income specified in subsection (b) (to the extent that any of such items constitutes gross income from sources within the United States), of any nonresident alien individual, or of any partnership not engaged in trade or business within the United States and composed in whole or in part of nonresident aliens, shall (except in the cases provided for in section 1451 and except as otherwise provided in regulations prescribed by the Secretary or his delegate under section 874) deduct and withhold from such items a tax equal to 30 percent thereof. (b) Income Items. — The items of income referred to in subsection (a) are interest (except interest on deposits with persons carrying on the banking business paid to persons not engaged in business in the United States), dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, and amounts described in section 402(a) (2), section 403(a) (2), section 631(b) and (c), and section 1235, which are considered to be gains from the sale or exchange of capital assets. [26 U.S.C.1958 ed., § 1441]
 Section 1442
 In the case of foreign corporation subject to taxation under this subtitle not engaged in trade or business within the United States, there shall be deducted and withheld at the source in the same manner and on the same items of income as is provided in section 1441 or section 1451 a tax equal to 30 percent thereof; except that, in the case of interest described in section 1451 (relating to taxfree covenant bonds), the deduction and withholding shall be at the rate specified therein. [26 U.S.C.1958 ed., § 1442]
 Section 301
 (a) In General. — Except as otherwise provided in this chapter, a distribution of property (as defined in section 317 (a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).
 (b) Amount Distributed. —
 (1) General rule. — For purposes of this section, the amount of any distribution shall be —
 (A) Noncorporate distributees. — If the shareholder is not a corporation, the amount of money received, plus the fair market value of the other property received.
 (B) Corporate distributees. — If the shareholder is a corporation, the amount of money received, plus whichever of the following is the lesser:
 (i) the fair market value of the other property received; or
 (ii) the adjusted basis (in the hands of the distributing corporation immediately before the distribution) of the other property received, increased in the amount of gain to the distributing corporation which is recognized under subsection (b) or (c) of section 311.
 * * * * *
 (3) Determination of fair market value. — For purposes of this section, fair market value shall be determined as of the date of the distribution.
 (c) Amount Taxable. — In the case of a distribution to which subsection (a) applies —
 (1) Amount constituting dividend. — That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.
 (2) Amount applied against basis. — That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock.
 (3) Amount in excess of basis. —
 (A) In general. — Except as provided in subparagraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property.
 (B) Distributions out of increase in value accrued before March 1, 1913. — That portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock and to the extent that it is out of increase in value accrued before March 1, 1913, shall be exempt from tax.
 (d) Basis. — The basis of property received in a distribution to which subsection (a) applies shall be —
 (1) Noncorporate distributees. — If the shareholder is not a corporation, the fair market value of such property.
 (2) Corporate distributees. — If the shareholder is a corporation, whichever of the following is the lesser:
 (A) the fair market value of such property; or
 (B) the adjusted basis (in the hands of the distributing corporation immediately before the distribution) of such property, increased in the amount of gain to the distributing corporation which is recognized under subsection (b) or (c) of section 311. [26 U.S.C. 1958 ed., § 301]
 
 
 [2]
 Section 61 of the Code provides the general definition of gross income: "all income from whatever source derived, including * * * (7) Dividends. * *" Treasury Regulations 1.61-9(b) provides: "Gross income includes dividends in property other than cash, as well as cash dividends. For amounts to be included in gross income when distributions of property are made, see section 301 and the regulations thereunder. * * *"
 
 
 [3]
 In a number of places the Code specifically distinguishes between domestic and foreign corporations. See, e. g., sections 243(a), 245(a), 901(b), 902, 921, 931 (a), 1371(a), 1504(b), and 1563(b) (2)
 
 
 [4]
 "The advisory group therefore recommends that section 301(b) (1) (B) be amended so that it will not apply to distributions to foreign corporations not engaged in trade or business in the United States, or to distributions from a foreign corporation unless a dividends-received deduction is allowable with respect to the distribution * * *." The latter recommendation, dealing with distributions by foreign corporations, was adopted by Congress in the 1962 Revenue Act. See 26 U.S.C. § 301(b) (1) (C). The Advisory Group's report was considered by the House Ways and Means Committee in its 1958 hearings on revenue revisions. See Hearings before the House Committee on Ways and Means, 85th Cong., 2d Sess., part 3, at 2458-2614