CENTRAL DE GAS DE CHIHUAHUA, S.A., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18370–91.                    Filed April 4, 1994.

*George W. Connelly, Jr.*, and *Linda S. Paine*, for petitioner. *T. Richard Sealy III*, for respondent.

OPINION

TANNENWALD, *Judge*: After making a jeopardy assessment, respondent determined a deficiency of $696,240 in petitioner's Federal income tax for its 1990 taxable year under section 881.[1] The case comes before us on cross-motions for summary judgment on the issue of whether the 30-percent tax imposed by section 881 applies in the absence of an actual payment of the income item, in this case rent.

As will subsequently appear, issues remain to be decided after we have disposed of the contentions of the parties herein, see *infra* pp. 516–517, so that the cross-motions are more properly characterized as motions for partial summary judgment. However, the facts upon which the cross-motions are based are not in dispute, so that the necessary conditions for partial summary judgment have been met. Rule 121(b); *Blanton v. Commissioner*, 94 T.C. 491, 494 (1990).

During 1990, petitioner (a Mexican corporation) rented a fleet of tractors and trailers to another Mexican corporation, Hidro Gas de Juarez, S.A. (hereinafter Hidro). Hidro did not pay rent for the equipment. Petitioner and Hidro were under common control within the meaning of section 482. The rented equipment was used to transport liquified petroleum gas from points within the United States to the Mexican border area where it was sold to Pemex, the Mexican Government-operated oil company, for distribution in Mexico.

Petitioner did not file a Federal income tax return for 1990. Respondent, acting under section 482, allocated to petitioner the amount of $2,320,800 as the fair rental value of the equipment for 1990 (which the parties now agree should be $1,125,000) and determined that petitioner was liable for the 30-percent tax imposed by section 881 on that amount, which is the primary position respondent asserts herein. Respondent also determined in the deficiency notice and asserts herein, as an alternative position in the event that we should grant petitioner's motion, i.e., hold that the section 881 tax does not apply, that petitioner is liable for tax under section 882 on income effectively connected with the conduct of trade or business within the United States. Similarly, petitioner has reserved the right, in the event that we grant

---

[1] All statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

respondent's motion, i.e., hold that the section 881 tax does apply, to contend that only a portion of the agreed rental value should be allocated to the use of the equipment within the United States and other matters relating to the nature of the relationship between petitioner and Hidro. The parties are in agreement that our disposition of the motions herein will facilitate resolution of the matters reserved.

The pertinent provisions of the Code upon which the positions of the parties are based are section 881(a) and section 1442(a), the latter section incorporating a portion of section 1441(a).

Section 881(a) imposes a tax "of 30 percent of the amount received from sources within the United States by a foreign corporation as * * * rents".[2]

Section 1442(a) provides, in pertinent part, that "In the case of foreign corporations subject to taxation under this subtitle, there shall be deducted and withheld at the source in the same manner and on the same items of income as is provided in section 1441 a tax equal to 30 percent thereof."

Section 1441(a) provides, in pertinent part, that "all persons * * * having the control, receipt, custody, disposal or payment of any of the items of income specified in subsection (b) [which includes "rent"] (to the extent that any of such items constitutes gross income from sources within the United States) of any nonresident alien individual or of any foreign partnership shall * * * deduct and withhold from such items a tax equal to 30 percent thereof".

Petitioner argues that, in order for section 881(a) to apply, there must be an actual payment of the income item and that the allocation of rent to petitioner from Hidro under section 482 does not satisfy that requirement. Respondent counters with the assertion that there is no requirement of actual payment under section 881 and that the allocation of rent to petitioner under section 482 provides a sufficient basis for imposing the 30-percent tax under that section. For the reasons hereinafter set forth, we agree with respondent.

In marshaling support for their positions, the parties have viewed section 881, on one hand, and sections 1441 and 1442, on the other, as being mirror images of each other. In this

---

[2] A different rate of tax is imposed in respect of such income "effectively connected with the conduct of a trade or business within the United States." Sec. 882(a).

context and in the absence of authority dealing with the issue whether actual payment is required for section 881 to apply, they have pointed to cases dealing with such requirement under sections 1441 and 1442 and comparable provisions of the Internal Revenue Code of 1939.

Petitioner relies on *L.D. Caulk Co. v. United States*, 116 F. Supp. 835 (D. Del. 1953). In that case, the issue was the obligation of the plaintiff to withhold tax, under section 143 of the Internal Revenue Code of 1939 (the predecessor of sections 1441 and 1442) on royalties payable to nonresident aliens at a time when payment of such royalties was blocked under U.S. law. The District Court articulated a thorough analysis of the obligation to withhold under such circumstances and concluded that, at least where the item of income could not have been legally paid, no such obligation existed. We think *Caulk* is clearly distinguishable from the situation herein, where there was no legal impediment to the payment of rent by Hidro to petitioner. The same caveat was expressed in *Southern Pac. Co. v. Commissioner*, 21 B.T.A. 990, 994 (1930), also relied upon by petitioner, which likewise involved the obligation to withhold in respect of blocked income and is therefore distinguishable. In a similar vein, we find petitioner's reliance on several of respondent's revenue rulings beside the point. The rulings involve clearly distinguishable circumstances, for the most part the measure of excise taxes on discounted payments, and in any event are not binding upon us. *Vulcan Matls. Co. v. Commissioner*, 96 T.C. 410, 418 (1991), affd. without published opinion 959 F.2d 973 (11th Cir. 1992). Since *Air Tour Acquisition Corp. v. United States*, 781 F. Supp. 669 (D. Haw. 1991), also relied upon by petitioner, involves excise tax on air transportation, it is also distinguishable.

Respondent relies on *Casa de la Jolla Park v. Commissioner*, 94 T.C. 384 (1990). That case also involved the obligation to withhold under section 1441(a) in a situation where interest was owed by petitioner therein to a nonresident alien who in turn owed money to a Canadian bank. Petitioner caused the amount of the interest it owed to be remitted to the Canadian bank to be applied against the sums due the bank from the nonresident alien. We held that petitioner in that case had an obligation to withhold. In so doing, we interpreted section 1441(a) as not necessarily requiring pay-

ment. We think *Casa de la Jolla Park* does not furnish respondent the degree of support which she attaches to it. In the first place, there was payment although it was indirect. In the second place, the case dealt with the obligation to withhold and not with the issue of liability for the tax as such, which is the situation we have before us. Under these circumstances, we see no reason for us to pursue that question of how far the obligation to withhold attaches to an item of income allocated by respondent under section 482. See *R. T. French Co. v. Commissioner*, 60 T.C. 836, 856 (1973), where we did not reach the question whether the obligation to withhold attached to a constructive dividend, a question we described as "tantalizing".

We think that the parties' use of the mirror image concept is misguided. Section 881 imposes a liability for tax, and sections 1441 and 1442 provide a method for collecting that tax. See *Newman & Co. v. United States*, 423 F.2d 49, 51–52 (2d Cir. 1970); see also *Coastal Chem. Corp. v. United States*, 546 F.2d 110, 118 (5th Cir. 1977); *Casanova Co. v. Commissioner*, 87 T.C. 214, 217–218 (1986). Thus, the former section and the latter two sections serve distinctly separate purposes. Consequently, we are not persuaded that, even if actual payment is required for withholding under sections 1441 and 1442 (an issue we expressly do not decide herein), it necessarily follows that the same requirement should apply in determining the import of the word "received" in section 881. Indeed, the District Court, in *L.D. Caulk Co. v. United States*, 116 F. Supp. at 840 n.9, upon which petitioner heavily relies, indicated a similar view.

Petitioner does not question the broad authority of respondent to allocate income under section 482. Moreover, petitioner does not question the authority of respondent to "create" income by an allocation between related entities—a question which was the subject of conflicting views until resolved in respondent's favor. See *Latham Park Manor, Inc. v. Commissioner*, 69 T.C. 199 (1977), and cases discussed therein, affd. without published opinion 618 F.2d 100 (4th Cir. 1980). To be sure, the existence of such authority was articulated in the context of provisions in the section 482 regulations for a correlative adjustment to the income of the entity from which the income is allocated. See sec. 1.482–

1(d)(4), Income Tax Regs.[3] The fact that such an adjustment may not have any effect on Hidro for the taxable year before us since Hidro is a foreign corporation which does not appear to be subject to U.S. tax for such year is irrelevant; the adjustment is deemed made and conceivably could affect Hidro's U.S. tax liability in a subsequent year. *Id.*

Petitioner asserts that section 482 does not confer upon respondent the authority to "create" a payment. We think this position begs the question to be resolved. There can be no doubt that the authority of respondent to allocate income encompasses the conclusion that such allocation "creates" a deemed payment. Any other view would render such an allocation nugatory in a host of situations implicating the application of section 482 even where only domestic corporations are involved. Indeed, petitioner carefully refrains from pushing its rationale that far, seeking only to apply the requirement of actual payment to the language of section 881. In this context, the question is whether a deemed payment constitutes "an amount received" under section 881. We think it does. A holding that actual payment is required could significantly undermine the effectiveness of section 482 where foreign corporations are involved. Such a view would permit such corporations to utilize property in the United States without payment for such use and thereby avoid any liability under section 881. We are not impressed with petitioner's argument that equating a deemed payment under section 482 with "an amount received" under section 881 would constitute a license to respondent to run wild in the arena of allocations under section 482 between foreign corporations under common control. Although respondent's authority under section 482 is extremely broad, it is not open ended, and a taxpayer will always be able to challenge an allocation as not permitted by law and/or not correct in amount.

---

[3] Sec. 1.482–1(d)(4), Income Tax Regs., provides in pertinent part:

(4) If the members of a group of controlled taxpayers engage in transactions with one another, the district director may distribute, apportion, or allocate income, deductions, credits, or allowances to reflect the true taxable income of the individual members under the standards set forth in this section and in §1.482–2 notwithstanding the fact that the ultimate income anticipated from a series of transactions may not be realized or is realized during a later period. * * * The provisions of this subparagraph apply even if the gross income contemplated from a series of transactions is never, in fact, realized by the other members.

Similarly, we are not impressed with petitioner's attempt to characterize the allocated fair rental value of the equipment as a constructive dividend to the parent of Hidro and petitioner and a nontaxable contribution of capital to petitioner. Petitioner's reliance on Rev. Rul. 78–83, 1978–1 C.B. 79, is misplaced. Aside from the fact that the ruling is not binding upon us, see *supra* p. 518, it simply does not apply to the instant situation. The facts of that ruling were that sums due one subsidiary were actually paid to another subsidiary. Thus, there was an actual transfer of property, which is the hallmark of cases involving both the allocation of intercorporate payments and the consequent presence of a constructive dividend. See *Sammons v. Commissioner*, 472 F.2d 449, 452–453 (5th Cir. 1972), affg. in part, revg. in part, and remanding T.C. Memo. 1971–145; *White Tool & Machine Co. v. Commissioner*, T.C. Memo. 1980–443, affd. 677 F.2d 528 (6th Cir. 1982).

The long and the short of the matter is that we hold that the word "received" in section 881 includes the fair rental value of the equipment even though the amount thereof was not actually received by petitioner from Hidro. We are reinforced in this holding by the fact that Congress has clearly indicated when it wished to refer to actual receipts. See the pre-1993 versions of sections 453 and 453A ("installment payments actually received"); the pre-1990 version of section 1402 (income of a corporate director derived in the taxable year when the services were rendered "regardless of when the income is actually paid or received"); section 9701 dealing with coal industry health benefits and defining a "1988 agreement operator" to include "an employer from which contributions were actually received". We reject petitioner's attempt to derive sustenance from the fact that, under sections 881(c) and 871(a)(1)(C), original issue discount element of portfolio interest is generally not subject to the tax until paid or the obligation is sold or exchanged. If anything, the fact that Congress found it necessary to include a payment requirement for original issue discount indicates that such a requirement was not intended to apply to the phrase "amount received" in section 881(a).

Petitioner's motion will be denied, and respondent's motion will be granted.

*An appropriate order will be issued.*

